Argued October 4, decided October 17, 1911.

# HULL *v.* ANGUS.

[118 Pac. 284.]

BILLS AND NOTES—REFERENCE TO CONDITION AFFECTING CHARACTER OF NOTE.

1. A note which upon its face refers to a mortgage, to the terms and conditions of which it is subject, in effect makes the note and the mortgage one instrument.

BILLS AND NOTES—NEGOTIABILITY—CONDITIONS IN NOTES—STATUTORY PROVISIONS.

2. Under Section 5834, L. O. L., which provides that an instrument to be negotiable must contain an unconditional promise or order to pay a sum certain in money, a note which upon its face states that it is given as a "part of the purchase price of real property, and is secured by mortgage of even date herewith, and is subject to all the terms and conditions of said mortgage," the mortgage referred to giving the maker of the note an option to pay it, or to have it canceled within one year, is not a negotiable instrument.

BILLS AND NOTES—BONA FIDE PURCHASER—"HOLDER IN DUE COURSE."

3. Under the express provisions of Section 5885, L. O. L., defining a "holder in due course," one who does not take a note in good faith, or for value, is not such a holder, and, as provided by Section 5891, L. O. L., a note in the hands of such holder is subject to the same defenses as if it were nonnegotiable.

DAMAGES—MEASURE OF DAMAGES—BREACH OF CONTRACT.

4. For any inexcusable violation of a valid contract, the defaulting party, whether there be any express stipulation to that effect or not, must respond in damages to the extent of fairly compensating the other party for the injury suffered.

DAMAGES—LIQUIDATED DAMAGES OR PENALTIES—CONDITIONAL CONTRACT—PRESUMPTION AND BURDEN OF PROOF.

5. Where a contract is conditioned for the performance of a collateral agreement, the sum mentioned therein as accrued damages will be presumed to be a penalty; and it is incumbent upon the party desiring to recover the sum mentioned as liquidated damages to show that it was so intended by the parties.

DAMAGES—LIQUIDATED DAMAGES AND PENALTIES—UNCERTAINTY AS TO AMOUNT OF ACTUAL DAMAGE.

6. When the actual damages in the case of a breach of a contract must necessarily be speculative, uncertain, and incapable of definite ascertainment, the stipulated sum will be regarded as liquidated damages, and may be recovered as such without proof of actual damages, unless the language of the contract, or the circumstances under which it was made, indicate a contrary intention, or it so manifestly exceeds the actual injury suffered as to be unconscionable.

DAMAGES—LIQUIDATED DAMAGES AND PENALTIES—INTENT OF PARTIES —UNCONSCIONABLE DAMAGES.

7. Where parties competent to contract, are equal masters of the situation, and deal at arm's length, a court of equity will not disturb the measure of damages established by them, unless it is so grossly unconscionable and oppressive as to shock the conscience of the court.

DAMAGES—LIQUIDATED DAMAGES AND PENALTIES—INSTRUCTION— BREACH OF CONTRACT TO SELL LAND—ALTERNATIVE STIPULATIONS.

8. Defendant conveyed real property to the plaintiffs for the purchase price of $16,300, of which a part was paid in cash, and a remaining $7,500 paid by a note which stated that it was subject to all the terms and conditions of a mortgage of real property, which it was given to secure; the mortgage by its own terms, and by reference to the terms of a separate agreement, providing that the plaintiffs should furnish defendants a certain amount to be expended on the property within a year, and that on performance of such condition plaintiffs should have an option either to pay the note, or within a year to require defendant, upon prescribed notice, to repurchase the property for $24,000 cash within 30 days; and, as liquidated damages for the defendant's failure to repurchase, it was provided that the mortgage given by plaintiffs should, together with the debt secured thereby, become immediately void, and the defendant should thereupon cancel the note and release the mortgage of record. *Held*, that the provision for liquidated damages in the alternative, on defendant's failure to repurchase, was not so unconscionable as to prevent its enforcement in plaintiff's action for the cancellation of the note and mortgage.

SPECIFIC PERFORMANCE—RIGHT OF ACTION—REMEDY IN EQUITY.

9. Where vendor and purchaser have agreed that the purchaser might pay a purchase-money note secured by mortgage, or at his option within a year require the vendor to repurchase, or to cancel the note and the mortgage of record, on the vendor's refusal to either repurchase or cancel the mortgage, equity will decree specific performance of the agreement of the parties to remove a cloud upon the purchaser's title to the property.

SPECIFIC PERFORMANCE—PLEADING—NOTICE.

10. In an action by the purchaser of the land, who had paid for it in part by notes secured by mortgage thereon, and who under the express provisions of the note and the mortgage together had an option to pay the note, or to require the vendor, on "30 days' notice in writing of their desire to sell under the terms of this agreement," to repurchase the land, a complaint which avers, as to notice, that a notice in writing was prepared, issued and signed by the purchasers, without averring that such notice was issued to the vendor, but only that it was issued, is bad on demurrer.

From Hood River: WILLIAM L. BRADSHAW, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by William Hull, Kate W. Hull, Elmer W. Sweany and Esther M. Sweany against F. W. Angus and J. H. Ferguson.

The substance of the complaint in this suit is that, on November 21, 1907, the defendant Angus conveyed certain real property to the plaintiffs for the purchase price of $16,300. Of this $7,000 was paid in cash, and for $1,800 thereof the plaintiffs gave their note and mortgage securing the same, the validity of which is not now in dispute. For the remaining $7,500 they gave their note, in words and figures as follows:

"$7,500.00.    Portland, Oregon, Nov. 21, 1907.    Ten years after date, I promise to pay to the order of F. W. Angus, seven thousand five hundered dollars, for value received, with interest from date, payable annually, at the rate of seven per cent. per annum until paid, principal and interest payable in U. S. gold coin at the First National Bank, Hood River, Oregon; and in case suit or action is instituted to collect this note, or any part thereof, I promise to pay such additional sum of money as the court may adjudge reasonable as attorneys' fees in said suit or action. This note is given as a part of the purchase price of real property and is secured by mortgage of even date herewith, and subject to all the terms and conditions of said mortgage. This note may be paid at any interest paying date."

For the purpose of securing this note, the plaintiffs gave their mortgage upon the real property, which by its terms was made junior to the mortgage for $1,800. The junior mortgage contains the following clause:

"An agreement contemporaneous with this mortgage and note has been entered into between the mortgagors and the mortgagee, whereby it is provided that if the mortgagors shall, within one year from the date hereof, tender to the mortgagee a written option to purchase from the mortgagors herein the premises herein described, for the sum of twenty-four thousand dollars cash in hand, the mortgagors will accept the note hereby secured as a part of said cash payment to the amount of said note, principal, and interest accrued; but if the mortgagee shall fail to accept said option and complete the purchase of said

Sig. 4

premises from the mortgagors within thirty days after the expiration of one year from the date hereof, then as liquidated damages for the failure of the mortgagee to take up said option and purchase said property from the mortgagors, the note hereby secured shall become and be null and void, and shall forthwith be canceled and surrendered by the mortgagee to the mortgagors, and this mortgage shall at once be released of record by the mortgagee. Said agreement is hereby referred to and expressly made a condition of this mortgage."

The agreement referred to was executed by the defendant Angus, as party of the first part, and the plaintiffs herein as parties of the second part.

This agreement, after reciting the conveyance of the land and the execution of the two mortgages already mentioned, proceeds thus:

"Whereas, first party has represented to said second parties that said premises will be worth the sum of $24,000.00 one year from the date of sale thereof to second parties, provided second parties shall expend the sum of $1,500.00 thereon in clearing same, under the supervision and direction of first party, without further cost or expense to second parties; said sum of fifteen hundred ($1,500.00) dollars to be paid by parties of the second part upon the completion of work; and whereas, second parties have relied upon such representations as true and a valuable consideration moving to them in said transaction above mentioned; Now, therefore, the party of the first part does hereby agree with the parties of the second part, that upon the performance of all the conditions imposed upon second parties by this agreement, he will purchase, or cause to be purchased from second parties, the above described lands at the agreed price of $24,000.00 cash in hand within thirty days from the expiration of one year from the date of sale of said premises to second parties, upon second parties giving first party thirty days notice in writing if their desire to sell under the terms of this agreement; and in the event of first party making default in the payment to second parties of the agreed

purchase price of $24,000.00 as above provided, then as liquidated damages for the failure of party of the first part to repurchase said premises from the parties of the second part as above provided, the mortgage given by parties of the second part to party of the first part to secure their promissory note for $7,500.00, shall, together with the debt secured thereby, become immediately null and void, and first party shall forthwith cancel said note and release said mortgage of record; and it is expressly understood and agreed that first party, in case of his default as above provided, shall accept said payment of $8,800.00 as the full purchase price of said premises. The mortgage of even date herewith for $7,500.00 together with the note secured thereby, given by second parties to first party to insure the payment of that portion of the unpaid purchase price of said premises, are hereby referred to and made conditional upon this agreement."

At the time of the execution of the note and mortgages, the defendant Angus addressed a letter to the plaintiff W. Hull, to the effect that the notice clause in the agreement mentioned shall be interpreted to mean that the notice mailed and registered to the defendant Angus, at Hood River, Oregon, should fulfill the agreement on the part of the plaintiff as regards such notice. The conveyance and all the other writings mentioned were executed contemporaneously and as part of the same transaction, and the mortgage in question was duly recorded in the mortgage records of Wasco County. The plaintiff furnished to the defendant Angus the sum of $1,500 mentioned in the agreement to be expended on the property under the direction of Angus, and he expended it under his own supervision and direction as he deemed best and proper.

The allegation respecting notice to the defendant Angus is here quoted in full:

"That, in pursuance of the terms and conditions of the agreement and the note and mortgage hereinbefore

described and set forth, these plaintiffs did, on the 29th day of September, 1908, and again on the 21st day of October 1908, cause notice in writing to be prepared, issued, and signed by these plaintiffs calling upon defendant F. W. Angus to purchase or cause to be purchased the said property from them, as provided in said written agreement and in said mortgage, within thirty (30) days after the 21st day of November, 1908, and offering on the part of them, the said plaintiffs, to perform and carry out all the obligations imposed upon them, the said plaintiffs, by the terms and conditions of said agreement and mortgage."

It is alleged that Angus failed and refused to buy the property at $24,000. It is also claimed that Ferguson, pretending to own the $7,500 note has commenced an action at law to collect $520 claimed to be due as interest. The complaint also alleges that Ferguson had notice of all the conditions contained in the note and mortgage, and if he bought at all he paid nothing for the same, but took with the fraudulent purpose of defeating plaintiffs in their right to have the same canceled. The defendants are alleged to be insolvent. A general demurrer to the complaint was overruled. The defendants stood on their demurrer, the court entered a decree canceling the note and mortgage for $7,500, and the defendants appeal.     REVERSED.

For appellants there was a brief and oral arguments by *Mr. A. J. Derby* and *Mr. Ernest C. Smith.*

For respondents there was a brief and oral argument by *Mr. Earl C. Bronaugh.*

MR. JUSTICE BURNETT delivered the opinion of the court.

There are three questions presented by this record: First. Is the note in question negotiable, so as to prevent plaintiffs from urging its cancellation as against the defendant Ferguson; or, in other words, is his title to the note such as to render him immune against the

attacks made upon that title by the complaint?   Second.
Do the stipulations for the surrender and cancellation
of the note and mortgage in question, as set forth in
those instruments and the accompanying contract, con-
stitute an agreement for liquidated damages or for a
penalty?   Third.   Is the allegation of the complaint
about notice to the defendant Angus sufficient to charge
him with knowledge of the purpose of plaintiffs to
exercise their option to sell the land for $24,000?   We
will consider these questions in the order noted.

1, 2. According to Section 5834, L. O. L., an instru-
ment to be negotiable must contain, among other things,
an unconditional promise or order to pay a sum certain
in money.   The note in question bears upon its face a
condition in these words:

"This note is given as a part of the purchase price
of real property, and is secured by mortgage of even
date herewith, and is subject to all the terms and con-
ditions of said mortgage."

It would be doing violence to the language to say
that the note is unconditional, when is expressly says
upon its face that it is subject to conditions.   The refer-
ence to the mortgage by the terms of the note is in
effect making the note and mortgage one instrument,
with the conditions rendering the note nonnegotiable.
*Bradstreet* v. *Rich,* 74 Me. 303; *In re Commissioners of
Washington Park,* 52 N. Y. 131; *Casey* v. *Holmes,* 10
Ala. 776.   Taken in connection with the reference to
its accompanying mortgage, making them in effect one
instrument, as these authorities teach, the note amounts
to a declaration by the makers that, although they have
promised to pay, yet on the face of the note they reserve
the option of either paying it, or within one year hav-
ing it canceled.   The operation of this provision is
wholly within the control of the makers, and amounts
to a condition destroying the negotiability of the note.

The case in hand is by this circumstance distinguished from the case of the *United States National Bank* v. *Floss,* 38 Or. 68 (62 Pac. 751: 84 Am. St. Rep. 752), cited by appellant; for failure of consideration discussed there, as affecting the negotiability of the note, was not a matter within the control of the maker. In that case the note was fair and unconditional on its face. To be sure, interest was unpaid in part, but that was a mere incident of the principal debt, and was held not to amount to notice of dishonor. Although the consideration was an executory contract, yet there was no allegation that the holder knew of any breach of it at the time he purchased the note; hence the plaintiff in that case was a holder of the paper in due course. Here, it is charged that, besides knowing all the conditions contained in the note and mortgage, the defendant Ferguson did not pay any valuable consideration for the note, and that is was assigned to him without consideration, and for the fraudulent purpose of preventing plaintiffs from exercising their right to have those instruments canceled.

3. In order to be a holder in due course of the note in question, the defendant Ferguson must come within the provisions of Section 5885, L. O. L., as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The language of the note itself, referring and making it subordinate to the conditions of the mortgage, shows upon its face that it is not a regular negotiable instru-

ment.  In addition to that, according to the allegations of
the complaint, Ferguson did not take the note in good
faith or for value.  He is therefore not a holder of the
note in due course, and according to Section 5891, L. O.
L., a note in the hands of any holder, other than the holder
in due course, is subject to the same defenses as if it
were non-negotiable.  It is not necessary to further elab-
orate this branch of the case, for in their brief, defendants
substantially admit that if plaintiffs have any right to
demand cancellation of the instruments in question the
right is equally available against both defendants.  We
conclude that, as against the defendant Ferguson, the
note is subject and amenable to the attack made upon it
by the complaint, and that as to him the demurrer was
not well taken in that respect.

4. The question of whether the parties provided for
liquidated damages or for a penalty is next to be con-
sidered.  For any inexcusable violation of a valid con-
tract, the defaulting party must respond in damages to
the extent of fairly compensating the other party for
the injury he has suffered.  This principle governs every
contract, whether there be any express stipulation to that
effect or not.  By agreement of the parties, in proper
cases, this principle may be enforced by a penalty or a
stipulation for liquidated damages; but even these are
not exclusive.  The parties may provide for themselves
some other lawful rule of action.  In the case in hand,
the parties have chosen not to provide for the payment
of money as the compensation for a possible breach by
the defendant Angus of his contract to re-purchase the
land at $24,000, or cause the same to be done.  They
have not fixed any sum of money as stipulated damages
for such a breach of contract; neither have they left the
damages to be assessed by a jury within the limits of a
prescribed penal sum.  They have provided that, in lieu
of any money compensation for his refusal to perform

the single stipulation to re-purchase the land, he shall do the single act of canceling the note for $7,500 and its securing mortgage. Really, in substance and reason, the defendant Angus by his contract engaged to do one of two things in the alternative, at his option, in the performance of the contract on his part, viz., either to buy the land at $24,000, or to cancel the note and mortgage for $7,500. In *Dermott* v. *Jones,* 2 Wall. 1 (17 L. Ed. 762), the Supreme Court of the United States uses this language: "It is a well-settled rule of law that, if a party by his contract charges himself with an obligation possible to be performed he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him." The contract of Angus, as disclosed by the complaint, is one he had a right to make. He could, if he chose, lawfully agree to buy the land at $24,000, or any other greater or less amount. He could also lawfully agree to the alternative of cancellation and surrender of the note and mortgage. Neither of these stipulations is against public policy nor a violation of any public law. Except for fraud, accident, surprise, mistake, undue influence or some other such reason of equitable cognizance, courts of equity, the same as courts of law, will hold competent contracting parties to their engagements. We cannot refuse to enforce the contracts of the parties as they make them, albeit they are improvident, neither can we make a new contract for them, and substitute it for the old one.

The defendant Angus has not bound himself by the flexible cord of a penalty, entailing upon him only such actual damages as might be assessed by the verdict of a jury. He has agreed to the strict and immovable standard of liquidated damages according to the language of his contract. He has chosen to agree in the alternative either to buy the land or to cancel the note. Can he be

relieved under any phase of equitable jurisdiction? The question of a fixed sum as liquidated damages came before this court most prominently in the early case of *Wilhelm* v. *Eaves,* 21 Or. 194 (27 Pac. 1053: 14 L. R. A. 297). The contract in question there contains some 16 different stipulations of varying degrees of importance, the damages for a breach of some of which would be easily ascertainable, while there were others not so clear as to the amount of damages applicable; but there was only one sum of money provided as an omnibus standard, by which to measure the damages of any one of those different stipulations, and the court held that, owing to the unconscionable effect, the parties could not be supposed to have intended that construction of their agreement, and so denied recovery of that specific sum of money as a compensation for the breach of the contract.

5-7. The next case where the question of liquidated damages came into prominent notice was that of *Salem* v. *Anson,* 40 Or. 339 (67 Pac. 190: 56 L. R. A. 169: 91 Am. St. Rep. 485). The defendant Anson had entered into a bond with the city of Salem to establish in that city an electric light plant in 30 days, or pay the city $5,000. He failed to establish the plant at all, and the city sued on his bond to recover the full sum mentioned. The court, by Justice BEAN, in discussing the question now under consideration, laid down two rules which, though not necessarily controlling in all cases, are regarded as affording a general guide by which controversies relating thereto may be determined:

(1) "Where the contract is conditioned for the performance of some collateral agreement, the sum mentioned therein will be presumed to be a penalty, and it is incumbent upon the party desiring to recover the sum named as liquidated damages to show that it was so intended by the contracting parties."

The case in hand evidently does not come within this rule, because there is no collateral agreement. The engagements of the parties are in the alternative, and each is a part of the same agreement. Strictly speaking, one cannot be considered as a security for the performance of the other. The two are of equal dignity and force, and merely present two alternatives, the performance of either of which would be considered the performance of the entire contract on the part of the defendant. The second rule is thus stated in *Salem* v. *Anson,* 40 Or. 339 (67 Pac. 190: 56 L. R. A. 169: 91 Am. St. Rep. 485) :

(2) "When the actual damages in case of a breach of the contract must necessarily be speculative, uncertain, and incapable of definite ascertainment, the stipulated sum will be regarded as liquidated damages, and may be recovered as such without proof of actual damages, unless the language of the contract shows, or the circumstances under which it was made, indicate a contrary intention of the parties, or it so manifestly exceeds the actual injury suffered as to be unconscionable."

In the case of *Sun Printing & Publishing Association* v. *Moore,* 183 U. S. 642 (22 Sup. Ct. 240: 46 L. Ed. 366), Justice WHITE, speaking for that court says:

"The decisions of this court on the doctrine of liquidated damages and penalties lend no support to the contention that parties may not *bona fide,* in a case where the damages are of an uncertain nature, estimate and agree upon the measure of damages which may be sustained from the breach of an agreement. On the contrary, this court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an agreed ascertainment of damages, is to be determined by the contract, fairly construed; it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract."

The principle seems to be, from a consideration of all the authorities, that where the parties are competent to contract, are equally masters of the situation, and deal at arm's length, the court of equity will not disturb the measure of damages established by the parties themselves, unless it is so grossly unconscionable and oppressive as to shock the conscience of the court and lead it to believe that, although so nominated in the bond, in the letter, it is not included within the spirit of the contract, or within the contemplation of the parties. With this principle in mind, and as if this were purely a question of liquidated damages or penalty, let us examine the transaction more particularly, and determine whether the alternative is so unconscionable as to render it inequitable to enforce the agreement as made by the parties.

8, 9. In the beginning, the plaintiffs paid cash in the sum of $7,000, gave their first mortgage, now undisputed, for $1,800 and the second note and mortgage, the instruments in question, for $7,500, making a total of $16,300. If the defendant Angus had performed his contract in re-purchasing the property, by the terms of their agreement, the plaintiff would have received cash, $16,500, and the return of their note and mortgage for $7,500, making a total of $24,000. This arrangement would have canceled their note and mortgage for $7,500, reimbursed them for the $7,000 cash, and extinguished their first mortgage of $1,800, which would have left them a net balance of $7,700 in cash, over and above all their expenditures for the purchase price of the property. True it is that they placed $1,500 in the hands of the defendant to be expended at his discretion in improving the property, but this was not part of the purchase price, and was as much for his benefit as for the benefit of the plaintiff, because it improved the property in question. There is enough of the element of uncertainty on both sides of the

contract to make the damages incapable of accurate ascertainment at the outset. On behalf of the plaintiff, they could not estimate how much, if any, the expenditure of $1,500 at the discretion of the defendant would enhance the value of the property. In the absence of observation on the part of the defendant, he could not foretell in advance whether the plaintiff could so manage the property as to pay the indebtedness attaching as a lien thereon. The whole transaction was more or less speculative, and the parties could not with any degree of accuracy foretell the measure of damages accruing to either by reason of a breach of their agreement. Hence it was competent for them to provide a rule of action in that respect by which their rights should be determined; and it is clearly within the proprieties of equity for them to agree in the alternative that the defendant should, as a solution of the dilemma, re-purchase the property at $24,000, or cancel the $7,500 note and mortgage. The option in favor of the plaintiff, to call for the re-purchase of the property or the cancellation of the note, was open from the beginning of the transaction until one year thereafter. As we have shown, if the option had been declared on the following day after the beginning of the transaction, the plaintiff would have received a net balance of $7,700 in cash. As time ran on and interest accrued, this might be perceptibly diminished, but this would not be sufficient to render the cancellation of the note and mortgage unconscionable as a measure of damages for the failure of the defendant to comply with either of the alternatives of his contract. The following precedents are illustrative of the questions involved: *Dwinel* v. *Brown*, 54 Me. 468; *Calbeck* v. *Ford*, 140 Mich. 48 (103 N. W. 516); *Moore* v. *Durnam*, 63 N. J. Eq. 96 (51 Atl. 449); *Witherspoon* v. *Duncan* (Tex. Civ. App.) 131 S. W. 660; *Ahlers* v. *Harrison*, 131 Iowa 289 (108 N. W. 331); *United States* v.

*Bethlehem Steel Co.,* 205 U. S. 105, 118 (27 Sup. Ct. 450: 51 L. Ed. 731). The equity side of the court is the forum in which to determine the questions involved in this controversy, for the mortgage remaining unsatisfied of record, when of right it ought to be canceled, constitutes a cloud upon plaintiffs' title to the land; the reason being that, as against any one seeking to enforce it, the plaintiffs would be put to their allegation and proof of its invalidity to withstand the claim.

Cancellation of instruments void in fact, but apparently valid, is a peculiar province of equity jurisdiction: *Breathwit* v. *Rogers,* 32 Ark. 758; *Hardy* v. *Brier,* 91 Ind. 91; *Gray* v. *Coan,* 23 Iowa 344; *Remington Paper Co.* v. *O'Dougherty,* 81 N. Y. 474; *Hoopes* v. *Devaughn,* 43 W. Va. 447 (27 S. E. 251). If equity will enforce cancellation of an instrument constituting a cloud upon the title to real property, in the absence of an agreement for that purpose between the parties, within the scope of the cases last cited, all the more will it decree specific performance of the express engagements of parties to accomplish the same result. We conclude on the merits of the transaction that the bill presents no equities in favor of the defendant Angus sufficient to excuse him from doing as he agreed in the alternative. His codefendant, as we have already shown, stands in no better condition in that respect, for the note he claims is nonnegotiable, and by the allegations of the complaint he is not a holder in due course.

10. On the third question, about notice to the defendant Angus, we think the allegations of the bill are insufficient to put him in default. The plaintiffs might have caused notice in writing to be prepared, issued, and signed by themselves, all as alleged, and still the defendant might not know anything about the notice. We speak of issuing a summons, but it often appears that a defendant is

not served, and knows nothing of any summons being issued. Full many a writ is issued, but never served, or otherwise brought to the notice of the defendant. The complaint does not say that the notice was issued to Angus, but only that it was issued. This is not sufficient to bring the election of the plaintiff to the knowledge of Angus, so as to charge him, or put him in default of execution of his contract. For this reason the court erred in overruling the demurrer to the complaint, and the decree must be reversed, with directions to the court below to proceed in a manner not inconsistent with this opinion.                  REVERSED.