Argued January 10, reversed and remanded February 5, petition to modify denied March 5, 1918.

## LEARNED *v.* HOLBROOK.*

(170 Pac. 530; 171 Pac. 222.)

**Evidence—Parol Evidence Affecting Writing.**

1. Section 713, L. O. L., providing that, where the terms of an agreement have been reduced to writing, it is to be considered as

*On the general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

On reasonableness of amount stipulated for as liquidated damages in a contract, see note in 34 L. R. A. (N. S.) 27.          REPORTER.

containing all of them, and there can be no evidence thereof other than the contents of the writing, prevents parol evidence, in action on a bond, conditioned that the obligors erect a sawmill of certain capacity on their property, that it was the understanding of the parties that a sawmill could not be erected there unless the streets were vacated.

### Contracts—Performance—"Impossible."

2. Contract of parties to build a mill on their property is not "impossible" of performance, so as to excuse nonperformance, because the mill could not be profitably operated without vacation of streets; impossible not meaning impracticable.

### Bonds—Conditions—Breach.

3. Obligation on a bond, conditioned that the obligors build a mill on their property, is matured by their selling their property without constructing the mill.

### Contracts—Possibility of Performance—Vacation of Street—Evidence.

4. As showing willingness of a city council to vacate streets for industrial plants, an ordinance for such purpose, though not complying with statutory requirements, is admissible.

> [As to right of action for damages for breach of unenforceable contract, see note in Ann. Cas. 1915D, 540.]

### Damages—Liquidated Damages or Penalty.

5. A bond running to owners of property in the neighborhood, conditioned to pay a certain sum as liquidated damages for failure of obligors to build a mill on their property, the damages being difficult or impossible of proof and measurement, is one for liquidated damages.

### Damages—Liquidated Damages—Reasonableness.

6. The reasonableness of damages liquidated by agreement is to be determined by the conditions in the minds of the parties when their agreement was made.

### Damages—Liquidated Damages—Burden of Proof.

7. Parties sued for liquidated damages have the burden of showing that no damages could have flowed from their default in the performance of their agreement.

### Appeal and Error—Directing Judgment.

8. The case being one in which it can be determined from the record what judgment should have been entered, the appellate court will, under Article VII, Section 3, of the Constitution, direct the entry thereof.

### ON PETITION FOR REHEARING.

### Damages—Liquidated Damages—Effect—Agreement.

9. Where the parties by contract stated a reasonable sum as liquidated damages, neither could urge that the damages were greater or less than the amount agreed upon.

From Multnomah: GEORGE N. DAVIS, Judge.

87 Or.—37

Department 2. Statement by MR. JUSTICE MC-CAMANT.

Prior to March 12, 1903, defendants were the owners of an undivided one-fourth interest in certain property situate in St. Johns. Oak Park Land Company and the Estate of B. O. Severance were the owners of the remaining three-fourths interest. An agreement partitioning the property was entered into and as a part of this agreement the defendants executed and delivered the following paper:

"Know all men by these presents, that we, Merrit L. Holbrook and F. S. Doernbecher, are held and firmly bound unto Oak Park Land Company, a corporation, Otis E. Learned and the Estate of B. O. Severance, deceased, in the sum of two thousand dollars in U. S. gold coin, to be paid to the said Oak Park Land Company, Otis E. Learned and the Estate of B. O. Severance, deceased, their heirs, successors, executors, administrators, or assigns, as liquidated damages for a failure to comply with and fulfill the conditions of this bond as hereinafter provided; for the payment of which well and truly to be made we do bind ourselves, our heirs, executors and administrators, firmly by these presents.

"Sealed with our seals and dated the 12th day of March, A. D. 1903.

"The conditions of this obligation are as follows: All of the parties hereto, are jointly the owners of Fractional Blocks numbered 9, 11, 12 and 13 and River Lots numbered one (1) to fourteen (14), both inclusive, in James John's Addition to St. Johns, and River Lot numbered 'A,' in James John's 2nd Addition to St. John's, all in the County of Multnomah and State of Oregon. The said ownership being held as follows: M. L. Holbrook and F. S. Doernbecher an undivided one-quarter, and Oak Park Land Company, Otis E. Learned and the Estate of B. O. Severance, deceased, the remaining undivided three-quarters, and besides this property the said M. L. Holbrook and F. S. Doernbecher are the owners of Fractional Block numbered

seven (7), known as the Knight Block in James John's Addition to St. Johns, in said County and State.

"In an endeavor to adjust and reconcile the several interests acceptably to all parties hereto, an arrangement for a division of the property has been made and mutually agreed to, whereby the said M. L. Holbrook and F. S. Doernbecher are to become the exclusive owners of Fractional Blocks 11, 12 and 13, and River Lots 7 to 14, inclusive, and the said Oak Park Land Company, and Otis E. Learned are to become the exclusive owners of the remainder of all properties hereinbefore mentioned.

"The foregoing conditions and arrangements are to be complied with at and before the delivery of this bond; but a part, which is indeed a vital part of the consideration moving the said Oak Park Land Company, Otis E. Learned and E. Quackenbush, administrator of the Estate of B. O. Severance, deceased, is an agreement on the part of the said M. L. Holbrook and F. S. Doernbecher to erect a sawmill upon their portion of the above mentioned property of 50,000 feet per day capacity, and to begin the actual construction thereof within sixty (60) days from this date, and to continue the said construction until the said mill is fully completed and ready for active operation, and the time of completion and active operation is to be not later than the first day of September, A. D. 1903.

"And in the event of the said sawmill being so completed on or before the first day of September, A. D. 1903, this obligation shall be void, otherwise to remain in full force and virtue."

It is admitted that the property was partitioned in the manner indicated in the above instrument and that defendants sold the property allotted to them without erecting a mill thereon. Oak Park Land Company assigned its cause of action to the plaintiff Quackenbush, who was also duly appointed trustee of the Estate of B. O. Severance. This action is brought to recover the sum of $2,000 as liquidated damages for the

failure and refusal of defendants to construct the mill in question.

The case was tried without a jury. The findings and judgment were for defendants and plaintiffs appeal.

REVERSED WITH DIRECTIONS.

For appellants there was a brief over the names of *Mr. Miller Murdoch* and *Mr. V. A. Crum,* with an oral argument by *Mr. Murdoch.*

For respondents there was a brief over the name of *Messrs. Wood, Montague & Hunt,* with an oral argument by *Mr. Richard W. Montague.*

MR. JUSTICE McCAMANT delivered the opinion of the court.

1. The defendant Holbrook was permitted to testify over plaintiff's objection and exception as follows:

"Q. What was the understanding among the parties, if there was any, as to the necessity of vacating streets intervening between the different parcels of that property?

"A. It was clearly understood by everybody interested in the transaction and who knew the property and knew what it was that a sawmill could not be erected there unless the streets were vacated. Nothing could be more clearly understood than that. That was discussed frequently and Mr. Powers assured me there would be no trouble about getting the streets vacated."

This testimony was clearly inadmissible. The parties had reduced their agreement to writing and their intent and understanding are to be gathered from the writing: Section 713, L. O. L.; *Maxson* v. *Ashland Iron Works,* 85 Or. 345, 353 (166 Pac. 37, 167 Pac. 271); *Muir* v. *Morris,* 80 Or. 378, 403 (154 Pac. 117, 157 Pac. 785). In a case tried without the intervention of a jury the admission of incompetent testimony will often

be disregarded, the court presuming that the improper evidence has been disregarded by a trier learned in the law: *Zelig* v. *Blue Point Oyster Co.,* 61 Or. 535, 544 (113 Pac. 852, 122 Pac. 756); *Williams* v. *Burdick,* 63 Or. 41, 49 (125 Pac. 844, 126 Pac. 603); *Latourette* v. *Miller,* 67 Or. 141, 147 (135 Pac. 327). We cannot indulge that presumption in the case at bar. The conclusions of the lower court are based on the assumption that the vacation of certain streets in St. Johns was contemplated by the parties and that their agreement was conditioned thereon.

2. The defense was based on the alleged impossibility of performing the agreement sued on. The third finding, duly excepted to, was as follows:

"That owing to the size and shape of the property in the city of St. Johns upon which the agreement hereinbefore set forth contemplated the erection of a mill, it was impossible to erect a sawmill of the capacity mentioned in the contract set forth in the complaint or to operate the same unless the streets intervening between the separated portions of said property should be vacated so that said property could be used, and that such facts were known and within the contemplation of all the parties to such agreement at the time of making the same and thereafter."

This finding is wholly without competent evidence to support it. The defendants introduced expert testimony to show that the lots set apart to them on the partition were too small in area to admit of the profitable operation of a sawmill thereon. This testimony does not lead to the conclusion that their contract was impossible of performance. In *Reid* v. *Alaska Packing Co.,* 43 Or. 429, 436 (73 Pac. 337) Mr. Justice BEAN says:

"The rule to be deduced from the authorities is that, if one enters into a valid contract, for a sufficient con-

sideration, to do a lawful thing, possible in itself—that is, in the nature of things—to be done, he must either carry out the contract according to its terms or answer in damages for a failure to do so. The mere impossibility of performance in fact will not be enough, but the contract must be obviously impossible upon its face before such a defense can be made."

The contract in that case was to pack, in Alaska, salmon "exactly like Puget Sound fancy Sockeye." The inference of impossibility was sought to be drawn from evidence that no such salmon are caught in Alaska. It was held that they might be caught in Puget Sound and transported to Alaska for packing, or that such salmon might be found in Alaska at some time in the future. The decision is to the effect that "impossible" does not mean "impracticable." A party who contracts to do that which is not inherently impossible on the face of the agreement is not to be released from his obligation by proof that it would be commercially unprofitable to carry it out. The doctrine of the above case is affirmed in *Anderson* v. *Adams,* 43 Or. 621, 630 (74 Pac. 215); *Fleishman* v. *Meyer,* 46 Or. 267, 270, 271 (80 Pac. 209); *Zanello* v. *Smith & Watson Iron Works,* 62 Or. 213, 217 (124 Pac. 660). It appears from the defendants' testimony that it is not impossible to erect a sawmill on the property in question; all that the testimony tends to prove is that such a mill could not be profitably operated without control of a larger piece of land and without the vacation of certain streets which intersect the property. The court erred in deducing the third finding from this testimony.

3. It is admitted that under date of April 8, 1903, the plaintiff Quackenbush signed and delivered the following instrument:

"Referring to a certain bond executed by F. S. Doernbecher and M. L. Holbrook on the 12th day of

March, 1903, in behalf of the Oak Park Land Company and Otis E. Learned, wherein time is made the essence of the matter of the beginning and completion of a sawmill on certain land of St. Johns mentioned in the said bond.

"This is to certify the modification by mutual consent of that portion of said bond relating to the time when said mill is to be begun and completed;

"That is to say, if the proceedings to be instituted by the said Holbrook and Doernbecher with the authorities for the vacation of said streets are prolonged by the opposition of the interested property owners beyond the usual time required in such matters such delay is not to be charged against the said Holbrook and Doernbecher under said bond."

Plaintiffs contend that this instrument is not binding upon them because it was executed without consideration and was signed only by the plaintiff Quackenbush at a time when he individually had no interest in the cause of action.

It will not be necessary to pass upon these contentions. Assuming that the foregoing instrument binds plaintiffs, it does not purport to do more than extend the time allowed defendants within which to fulfill their covenant. It is alleged in the complaint that defendants have refused to build the mill stipulated for and this allegation is proved by the admitted fact that they sold the property without first constructing a mill thereon. This sale operated to mature the obligation of defendants.

4. It appears by the testimony that defendants made application for the vacation of certain streets which intersected their property and that the council declined to order a vacation, although it was willing to lease the streets to defendants for a term of years at a nominal rental. From this testimony the court found "that the authorities of the city of St. Johns positively and finally

refused to vacate said streets or any part thereof sufficient to enable the sawmill to be erected.'' The finding that the refusal was final is without support in the evidence. The council of St. Johns was subject to change at each city election and the refusal to vacate on one application by defendants could not in the nature of things be final. Plaintiffs introduced in evidence a certified copy of an enrolled ordinance of date February 15, 1904, vacating certain of these streets. Defendants contend that the ordinance was inadmissible for the reason that the record fails to show compliance with Sections 3276 and 3281, L. O. L., prescribing the procedure for vacating streets. We think the ordinance was admissible for the purpose of showing the attitude of the council on the subject of vacating streets. It tended to show that if defendants had persevered with their application the streets would have been vacated at their instance.

5. It remains to construe the agreement on which the action is brought. Defendants contend that the sum of $2,000 mentioned therein is a penalty and that no recovery can be had against them for the reason that plaintiffs have suffered no damage. The obligation of the defendants ran to the owners of properties in the immediate vicinity of the lots and blocks set apart to the defendants in severalty. It was the belief of the obligees that the construction of a sawmill by the defendants on their property would enhance the value and promote the sale of these other properties belonging to the obligees. The plaintiff Quackenbush testifies that the defendants were liberally dealt with on the partition. This testimony is not negatived by the findings and is corroborated by several circumstances which appear in the record. It appears from the agreement that the stipulation of the defendants to erect the

mill was "a vital part of the consideration moving" obligees to convey to them in severalty the property on which the mill was to be constructed. Mr. Quackenbush testifies without contradiction that the damages of plaintiffs arising from the default of the defendants in the performance of their stipulation would be difficult or impossible to prove and admeasure. The parties dealt with each other at arm's-length. On both sides they were business men of experience and no fraud or imposition is suggested. It is well settled in this jurisdiction that in such case the agreement of the parties liquidating their damages will be enforced unless the sum agreed upon "is so grossly unconscionable and oppressive as to shock the conscience of the court": *Hull* v. *Angus,* 60 Or. 95, 107 (118 Pac. 284). We cannot improve upon the statement of the law made by Mr. Justice BURNETT in the case last cited, or that of Mr. Justice BEAN in *Salem* v. *Anson,* 40 Or. 339, 344 (67 Pac. 190, 91 Am. St. Rep. 485, 56 L. R. A. 169). These decisions have been followed and applied by Mr. Justice MOORE in *Krausse* v. *Greenfield,* 61 Or. 502, 512 (123 Pac. 392, Ann. Cas. 1914B, 115), and by Mr. Justice BEAN in *Strode* v. *Smith,* 66 Or. 163 (131 Pac. 1032). This case is distinguished from *Wilhelm* v. *Eaves,* 21 Or. 194, 200 (27 Pac. 1053, 14 L. R. A. 297), and *Alvord* v. *Banfield,* 85 Or. 49, 58, 59 (166 Pac. 549). In each of these latter cases the stipulated damages were agreed to be paid on default in any one of a number of covenants. The actual damages arising from these defaults varied greatly in amount. From this circumstance an intention to name a penalty was properly inferred. In the case at bar the agreed damages are applied by the parties to the breach of a single covenant, the agree-

ment to construct a sawmill. In 19 Am. & Eng. Enc. Law (2 ed.), 405, it is said:

"The fact that a contract is for the performance of a single act or condition is regarded by the courts as favoring the construction that a stipulated sum to be paid on nonperformance is to be regarded as liquidated damages rather than as a penalty."

*Pearson* v. *Williams Admrs.*, 26 Wend. (N. Y.) 630, is parallel with the case at bar. ·The defendant in that case purchased lots from plaintiff for $21,000. It was a part of the contract that defendant should erect brick houses on the lots purchased and in default of such erection defendant agreed to pay damages in the sum of $4,000. Plaintiff was the owner of other property in the neighborhood. Chancellor WALWORTH held that the agreement was one for the payment of liquidated damages and that defendant was liable in accordance with the letter of his agreement.

6. The question remains as to whether the damages fixed by these parties are so excessive and unreasonable as to take the case out of the operation of the rules announced in the above authorities. The lower court made no finding on the subject of damages. The obligees retained as their property Fractional Block 9 and River lots 1 to 6, inclusive. The Severance Estate was the owner of sixteen acres or more on the hill in the neighborhood. This latter property was subsequently platted and sold in part at from $300 to $800 a lot. The property was platted in such manner that an acre of land was cut up into six lots and a fraction. The correspondence indicates that the defendants considered that the river front property in which they held a one-fourth interest was worth about $24,000 at the time the property was partitioned. The benefit to accrue to the obligees from the erection of a mill on the property as-

signed to the defendants in severalty was speculative
and uncertain, but it might have largely exceeded
$2,000. The construction of the mill might have made
the difference between an immediate sale of the prop-
erties of the obligees at a fair price and the burden of
carrying the property through a series of years when
property should be unsalable. The plaintiff Quacken-
bush testified that a mill which should be "compelled to
suspend because of its general worthlessness would not
have been of advantage to the property." But it is
fair to assume that the erection of such a mill was not
within the contemplation of the parties. The defend-
ants would not have agreed to erect a mill had they
not believed that it could be operated profitably. The
reasonableness of damages liquidated by agreement of
the parties is to be determined by the conditions in the
minds of the parties when their agreement is made:
*Hull* v. *Angus,* 60 Or. 95, 107, 108 (118 Pac. 284). The
obligee can recover no more than the stipulated sum
even though his actual damages are in excess thereof
and the obligor is liable for this sum if the damages
prove less or nonexistent: *Salem* v. *Anson,* 40 Or. 339,
344 (67 Pac. 190, 91 Am. St. Rep. 485, 56 L. R. A. 169).

7. The evidence fails to satisfy us that the obligees
sustained no damage in the instant case. The conten-
tion of the defendants on this subject is based wholly on
their expert testimony that a mill could not be operated
profitably on the lots set apart to defendants without
the vacation of the intersecting streets and on their
further claim that the council was unwilling to vacate
these streets. There were received in evidence certi-
fied copies of two ordinances vacating streets in St.
Johns for the accommodation of industrial plants. The
record fails to show that the statutory requirements for
the vacation of streets were complied with, but the
ordinances sufficiently show a willingness on the part

of the council to vacate streets with a view to securing local industries. We may concede that these vacations were irregular and abortive. The inference nevertheless remains that what the council attempted to do ineffectively, it was ready to do regularly. The burden was on defendants to show that no damages could have flowed from their default in the performance of the agreement sued on. In our opinion, they have not sustained this burden. We do not overlook the principle that the findings of the lower court are binding upon us in so far as they are supported by the evidence. This principle has a very limited application in the instant case. Some of the findings are without support in the evidence and the determinative facts are admitted either by the pleadings or by the testimony of the defendant Holbrook.

8. This is a case in which we can determine from the record what judgment should have been entered in the court below. It is our duty under the provisions of Article VII, Section 3, of the Constitution to direct the entry of such judgment. The defendants agreed to construct a mill or to pay $2,000: *Hull* v. *Angus,* 60 Or. 95, 106 (118 Pac. 284). Having refused to do the former, it is their legal duty to do the latter. Their sale of the property was their final refusal to build the mill. The judgment is reversed and the cause remanded to the Circuit Court with directions to enter judgment for plaintiffs for $2,000, without interest: *Sargent* v. *American Bank,* 80 Or. 16, 40–46 (154 Pac. 759, 156 Pac. 431); *Holtz* v. *Olds,* 84 Or. 567, 580 (164 Pac. 583, 1184).

REVERSED WITH DIRECTIONS.
PETITION TO MODIFY DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.

Denied March 5, 1918.

ON PETITION TO MODIFY FORMER OPINION.    DENIED.

(171 Pac. 222.)

*Messrs. Wood, Montague, Hunt & Cookingham,* for the petition.

*Mr. Miller Murdoch* and *Mr. V. A. Crum, contra.*

Department 2.    MR. JUSTICE McCAMANT delivered the opinion of the court.

Defendants petition us to modify our conclusions in so far as they direct the lower court to enter judgment in favor of plaintiffs in the sum nominated in the bond. They ask that the cause be remanded to the lower court with leave to defendants to offer evidence to show that plaintiffs have sustained no damage by the default complained of.

9. For reasons with which we are still satisfied, we have ruled that it was competent for these parties to liquidate the damages arising from a default by the defendants in the agreement alleged in the complaint. We have decided that the sum at which these damages were liquidated was not unreasonable in view of the conditions obtaining when the bond was executed.

It follows that the parties are bound by their agreement.    Plaintiffs could not be heard to say that their damages are greater than $2,000, and defendants are not entitled to urge that there are no damages: *Salem* v. *Anson,* 40 Or. 339, 345 (67 Pac. 190, 91 Am. St. Rep. 485, 56 L. R. A. 169); *Webster* v. *Bosanquet,* [1912] App. Cas. 394 (Ann. Cas. 1912C, 1019).

The former opinion is adhered to.

PETITION TO MODIFY DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.