Argued September 12, reversed November 13, 1969

SAVAGE, *Respondent and Cross-Appellant, v.*
PETER KIEWIT SONS' CO., *Appellant*
*and Cross-Respondent.*

461 P. 2d 59

*Cleveland C. Cory,* Portland, argued the cause and filed briefs for appellant and cross-respondent.

*Bruce M. Hall,* Portland, argued the cause for respondent and cross-appellant. With him on the briefs were Rives & Schwab and Leonard A. Girard, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This case was first before us in *Savage v. Peter Kiewit Sons',* 249 Or 147, 159, 432 P2d 519, 437 P2d 487 (1968). On that appeal we reversed a decree in favor of plaintiff and directed the trial court to dismiss the complaint. On rehearing we modified our mandate and remanded the case "for further proceedings to resolve any issues remaining to be litigated

between plaintiff and the defendant Kiewit." Upon remand the trial court entered a decree in favor of plaintiff against defendant Kiewit, Kiewit appeals.

A brief summary of the facts is necessary to put the present appeal in focus.

Kiewit entered into a contract with the Oregon State Highway Commission for the construction of a steel bridge in Portland. Savage entered into a sub-contract with Kiewit to sandblast and paint the steel. Savage commenced sandblasting operations which caused damage to Alaska Steel Company. Alaska Steel Company obtained a decree enjoining Savage from sandblasting. Savage and Kiewit then devised a "cocoon" which prevented the sand particles from falling on the property below. This increased the cost of Savage's operation. Savage claimed that the Commission was obligated to reimburse it for the increased cost and when the Commission refused to pay, Savage brought a declaratory judgment action against the Commission and Kiewit. Kiewit supported Savage's claim to compensation against the Commission.

The trial court held that Savage was entitled to compensation on the ground that the "cocoon" method constituted an alteration in the details of construction.

The Commission appealed. We reversed, holding that Savage had assumed the risk of damage to third persons and that its obligation was not discharged by impossibility of performance.

On petition for rehearing we modified the decree and remanded the case for the determination of the rights, if any, of Savage and Kiewit inter se.

On remand the trial court held (1) that Savage agreed only to take "reasonable" and "necessary" precautions to prevent damage and that since he took

these precautions he fulfilled the terms of the contract; (2) that because Kiewit had supported Savage's claim against the Commission, Kiewit had waived its right to contest Savage's claim, and (3) that Kiewit was estopped to deny Savage's claim because Kiewit had urged Savage to continue performance on the assurance that Savage would be compensated.

■ The trial court's first point is answered by our original opinion. There we held that Savage, by its contract, assumed the risk of damage to third parties. We did not say that this assumption of liability would arise only if Savage failed to take reasonable and necessary precautions. The contract contains no such qualifications in spelling out Savage's liability. The contract provides that "the contractor shall be responsible for all damages to property, injury to persons, and loss, expense, inconvenience, and delay that may be caused by or that may result from any act, omission, or neglect of the contractor, his subcontractors, or his employees in the performance of the work to be done under the contract."

■ Our original opinion quite clearly stated that the damage caused by Savage's operations were of the type which he could have foreseen and that he assumed the risk of liability for this type of damage. Our holding on that point established the law of the case and was binding on the trial court.

■ The contention that Kiewit waived its right to deny Savage's claim to additional compensation is without merit. The alleged waiver is based upon the fact that Kiewit supported Savage's claim for additional compensation against the Commission, concurring in Savage's argument that the "cocoon" method of controlling the sand particles constituted an alteration in

the details of construction. It is also asserted that waiver can be predicated upon the fact that Kiewit initially admitted the allegations of Savage's complaint and joined in the prayer for a declaratory judgment.

Kiewit's action in cooperating with Savage occurred at a time when both parties assumed that the Commission would ultimately be liable for the increased costs in question. Kiewit's cooperation with Savage in seeking to impose liability on the Commission was in no sense inconsistent with Kiewit's assertion that it was not liable for such costs. We are unable to find any evidence of waiver.

■ Equally unsupported is the finding of estoppel against Kiewit. It is contended that Savage was induced to continue with the sandblasting under the new method by Kiewit's assurance that compensation would be forthcoming. The evidence does not support this contention. On September 14, 1965 Savage wrote to Kiewit as follows: "I understand your letter of September 13, 1965 to signify that my company is to proceed to work for you on a time and materials basis under your supervision and that it will be paid for its work by you without regard to the decision of the Supreme Court in the appeal filed by the Oregon State Highway Commission."

On September 20, 1965 Kiewit responded to Savage's letter as follows: "The conclusions that you draw from our letter, as expressed in the first paragraph and elsewhere in your letter of September 14, 1965 are completely unwarranted * * *."

On September 30, 1965 Kiewit again wrote to Savage directing him "to proceed in accordance with our letter of September 13, 1965."

We find nothing in this correspondence nor in any

other part of the record which can be regarded as a promise or assurance by Kiewit that it would pay Savage for the added costs made necessary to prevent damage to third persons. Kiewit did urge Savage to proceed with the work and it is clear that Kiewit was benefited by Savage's prompt performance, but these facts do not necessarily imply a promise on the part of Kiewit to pay the added costs of performance.

It is to be remembered that the correspondence referred to above came after the trial court's decree of August 16, 1965, which awarded plaintiff the amount he had requested and although the decree imposed liability for the payment of this amount upon both the Commission and Kiewit, it also provided that if Kiewit was forced to pay Savage, Kiewit would be entitled to recover that amount from the Commission.

Under these circumstances Kiewit could assume that unless the decree was reversed on appeal it would not have to bear the cost of the work it was urging Savage to perform. It is not reasonable to imply from such circumstances a promise by Kiewit to pay Savage irrespective of Kiewit's right to reimbursement.

Plaintiff attempts to find an estoppel against Kiewit from other circumstances. Thus it is argued that since Kiewit supported the decree of August 16, 1965 and accepted benefits under that decree, it is estopped to attack that decree on this appeal. In support of this contention plaintiff cites *Pacific General Contractors v. Slate Construction Co.*, 196 Or 608, 251 P2d 454 (1952), which holds that a party cannot claim the benefit of a judgment and then appeal from it. That case is not apposite because here Kiewit is not appealing from the decree of August 16, 1965, but is appealing from the decree entered after the previ-

ous decree was reversed and the case was remanded for further proceedings.

There being no evidence to support plaintiff's claim of waiver or estoppel, plaintiff has no right to recover from Kiewit the increased costs arising out of the precautionary measures it was forced to take in completing the subcontract. The basis for allocating this loss to plaintiff rather than to defendant Kiewit is fully explained in our original opinion.

■ In our original opinion we assumed at the time Savage entered into contract with Kiewit there was a choice of sandblasting by any one of three methods. There was, in fact, no such choice because at that time Kiewit had elected to have the sandblasting job performed after the steel was erected. At the time he made his bid Savage was aware of the fact that he would be required to sandblast after the structure was erected. However, whether or not Savage had a choice of methods of performance is immaterial. As we explained in our previous opinion Savage knew or had reason to know the risks involved in sandblasting on the site and "he expressly assumed the risk of having to take all necessary precautions to avoid damage to third parties." 249 Or at 155-56, 432 P2d 519, 524.

The decree of the trial court is reversed.