Submitted on briefs October 19; affirmed December 14, 1948

# WEAVER *v* AUSTIN
### 200 P. (2d) 593

In Banc.

*U. S. Balentine,* of Klamath Falls, and *Avery W. Thompson,* of Roseburg, filed a brief for appellant.

No appearance for respondent.

KELLY, J.

This suit is based upon a contract originally executed by the parties plaintiff and defendant on or about the 10th day of November, 1945, evidenced by four written documents and thereafter orally modified.

The pertinent provisions of the original contract of leasing, being designated in plaintiff's complaint as Exhibit A, are as follows:

"This Agreement, Between P. R. Weaver, hereinafter called the Lessor, and, Pearl Austin, hereinafter called the Lessee,

Witnesseth:

That the said lessor, in consideration of the covenants herein contained, does hereby lease unto

the said lessee, her heirs, executors, administrators and assigns, from the first day of March, 1946, until the first day of March, 1956, the following described premises, lying and being in the County of Douglas and State of Oregon, to-wit:

Beginning at a 5/8" iron bolt on the East right-of-way line of the Pacific Highway, said bolt marks the Southwest corner of a tract of land owned by P. R. Weaver and bears South 15 degrees 41 minutes West 838.4 feet from the Southeast corner of Block Six (6) in the Town of Myrtle Creek, Oregon; thence South 56 degrees 20 minutes East 113.2 feet along P. R. Weaver's Southerly line; thence North 61 degrees 24 minutes East 100.0 feet; thence North 50 degrees 42 minutes West 108.1 feet to the East right-of-way line of the Pacific Highway; thence South 61 degrees 24 minutes West 112.0 feet along said right-of-way line to the point of beginning; containing 0.24 acres, more or less, in the Town of Myrtle Creek, Douglas County, Oregon; said premises to be used by the lessee as and for a restaurant and tavern; the said lessor and lessee hereby promising and agreeing to the following terms and conditions for the payment of rent in connection therewith.

Whereas the above described property is now a vacant lot and contains no improvements thereon; the lessee agrees to construct upon said premises a building to be used for the purposes hereinbefore recited, and constructed pursuant to the specifications and plans hereunto attached and made a part hereof, said building to cost approximately Five Thousand ($5,000.00) exclusive of the restaurant fixtures and personal property to be furnished by the lessee.

On the completion of the said building which is to be on or about March 1, 1946, the lessee, for a period of six months thereafter, agrees to pay Fifty Dollars ($50.00) per month rental as follows: Twenty-five Dollars ($25.00) in cash, and Twenty-

five Dollars ($25.00) to be credited to the lessor on the purchase of the building erected by the lessee.

It Is Further Agreed that the rental, on and after six months after completion of said building and continuing for nine and one-half (9½) years until the termination of this lease, shall be the sum of One Hundred Dollars ($100.00) per month payable as follows: Fifty ($50.00) per month in cash, and Fifty Dollars ($50.00) per month to be credited to the lessor on his purchase of said building; the credits on said building to continue until the full cost of the building has been repaid by said rental to the lessee, after which time and until the termination of this lease the lessee agrees to pay One Hundred Dollars ($100.00) in cash as and for the rental on said building, the lessee no longer having any ownership in said building.

&ast;    &ast;    &ast;    &ast;    &ast;

It Is Specifically Understood and Agreed that the lessee is authorized to assign or sublet the property hereinbefore described during the term of this lease, and that the said lessee shall have the option to buy the real estate hereinbefore described and the improvements thereof from the lessor during the term of this lease or at the end of the term, at the lessor's best and lowest offer for said premises; any amounts unremitted to the lessee on the building cost as of the time of said sale to be deducted from the purchase price.

It Is Further Understood and Agreed that in the event the lessee shall fail to make any cash payments of rent during the term of this lease the lessor shall be automatically credited with the full amount of the month's rental on the purchase of the building and for each month the lessee shall so fail to pay the cash rental as stipulated the term of this lease shall be reduced to the extent of one month.''

The following is a copy of building specification

signed by plaintiff and defendant, the same being designated in plaintiff's complaint as Exhibit B:

"We, the undersigned, enter into an Agreement on a building as described below:

Building must be forty (40) feet wide and fifty (50) feet long; full concrete floor; built of lumber, and siding and mop roof of composition asphalt;

Front of building forty (40) feet wide; and twenty-five (25) feet long, to contain restaurant and bar

Rear section of building (40 x 25) to contain the following:

Dining room, 14 x 16 feet; all rooms outside measurements;

One bedroom, 11 x 12 feet;

Two clothes closets, 4 x 4 feet;

One bedroom, 8 x 12 feet;

Two toilets, 6 x 8 feet;

One bath, 6 x 10 feet;

Kitchen and storeroom to be partitioned, as agreed, after building has been erected;

Brick chimney;

Building to be ceiled inside with veneer or plaster board;

Front of building 14 feet high with 10 foot ceiling in front room which room is 40 x 25 feet;

All other rooms to have eight (8) foot ceiling.

All plumbing, lights and water to be installed by I. S. Weaver, (Contractor).''

The third document signed by plaintiff and defendant, being designated in plaintiff's complaint as Exhibit C, is a floor plan of the building in suit; and the fourth document so signed, designated in said complaint as Exhibit D, is as follows:

"Building Agreement
December 10, 1945

All building material for building as described on agreement must be purchased and placed on

ground by the Lessee and I. S. Weaver and P. R. Weaver build the building as described in contract for the sum of $2800.00 Twenty-eight Hundred Dollars with half of the price to be paid when the roof is complete and the last half when the building is complete.

Bars fixtures and inside decoration is not included in the contract.

/s/    Pearl L. Austin
/s/    P. R. Weaver"

Plaintiff in his complaint alleges that subsequent to the execution of said contract the plans and specifications for said building were verbally and mutually changed by providing for two outside toilets and providing for the use of the space, shown upon the floor plan for two inside toilets, as storage room. Defendant in her second amended answer denies that said alleged change in the floor plan and location of toilets was agreed upon.

The complaint contains a recital of five ways in which it is alleged defendant breached her agreement with plaintiff.

■ That from and after the latter part of February, 1946, defendant has wholly failed, neglected and positively refused to furnish additional materials necessary for the completion of said building.

■ That defendant has personally deliberately annoyed and harassed the plaintiff and interfered with him in the erection of said building.

■ That defendant has wholly failed, neglected and refused to pay various bills for materials theretofore delivered and has caused plaintiff's lands and the building partially erected thereon to be subject to materialmen's liens.

■ That defendant has wholly failed, neglected and deliberately refused to pay any rentals whatsoever in accordance with the leasehold agreement above mentioned.

■ That defendant has openly announced that she does not intend, and, in accordance therewith, has refused to continue the performance of any part of said agreements or either one of them as therein provided on her part to be kept and performed.

Paragraphs VI, VII, VIII and IX of plaintiff's complaint are as follows:

## "VI

That to and including the latter part of February, 1946, plaintiff has well and truly kept all the terms and conditions of said agreements on his part to be kept and performed and used all materials furnished by the defendant in accordance with her instructions and directions;

That from and after the latter part of February, 1946, plaintiff has been prevented by defendant, by reason of nondelivery of materials, from further working on or in any way completing the building on said premises;

That from and after the latter part of February to the present time, plaintiff has been ready, able and willing, when permitted by the defendant, to further fully perform all the terms and conditions of said agreements or any of them on his part to be kept and performed.

## VII

That by reason of its unfinished condition and the refusal of the defendant further to perform, the building now upon the premises above described is wholly unfit for occupancy either as a restaurant or as a dwelling or for any other purpose.

## VIII

That by reason of the facts aforesaid and the failure, neglect and refusal of the defendant to furnish additional materials for the completion of said building and the failure and neglect and refusal of the defendant to further perform said agreements, plaintiff is deprived of all rentals and other income from said real property.

## IX

That the premises above described are situated in the city of Myrtle Creek upon the main public highway through said city; that defendant has placed upon a portion of said premises a house trailer with a delapidated and highly objectionable lean-to structure thereto attached which is a nuisance to plaintiff and to the public at large; that defendant maintains a right to so squat upon plaintiff's lands with said highly objectionable structure pursuant to the terms of the leasehold agreement marked Exhibit A.''

In her second amended answer and counterclaim, defendant admits that the land in suit is owned by plaintiff; also admits the execution of the agreement of leasing and for the construction of said building; denies that the plans and specifications were verbally and by mutual agreement changed so that the space shown upon the floor plan for two toilets was to be used as storage room and instead of placing the toilets there, two outside toilets were to be constructed and furnished; admits that the building is in a partial state of completion and is wholly untenantable; and denies that she breached her agreement as alleged in plaintiff's complaint.

Defendant also denies paragraphs VI, VIII and X of plaintiff's complaint.

As to paragraph VII thereof, defendant admits that the premises are wholly unfit for occupancy for any purpose; but, except as so admitted, defendant denies said paragraph VII.

As to paragraph IX of said complaint, defendant admits that the premises in suit are situated in the city of Myrtle Creek, Oregon, upon the main public highway through said city and that defendant has placed upon a portion of said premises a house trailer; defendant also admits that she maintains a right to squat upon said premises; but, except as so admitted, defendant denies paragraph IX of plaintiff's complaint.

As a further and separate answer and counterclaim, defendant alleges:

1.

"That the plaintiff herein leased and let unto the defendant the property described in plaintiff's complaint by written agreement marked 'Exhibit A' in plaintiff's complaint, and hereby referred to and by such reference made a part of this further answer and counterclaim, and that by the terms of said written agreement of lease it was and is provided that said premises should be used by defendant for restaurant and tavern and it was further provided by said written agreement that the defendant herein should construct upon said premises a building according to the plans and specifications attached to said lease and made a part of said lease and that said building should cost approximately $5000.00, exclusive of restaurant fixtures and personal property. Said written agreement of lease further provided and does now provide that said building should be completed on or about the 1st day of March, 1946.

2.

That the plaintiff and defendant herein by writing and oral agreements entered into the fur-

ther agreement and the plaintiff thereby in said written and oral agreements undertook to construct the building provided for in Exhibit A in plaintiff's complaint contained, and according to the terms and conditions provided for in said Exhibit A, and thereafter entered upon the undertaking of constructing for the defendant, said building.

### 3.

That the plaintiff so carelessly and negligently constructed said building that the same, as so constructed by said plaintiff, is wholly unsuitable for the purpose for which it was agreed to be constructed in that the plaintiff nailed the roof of said building and so constructed the walls of said building so as to cause said walls to crack by shrinking and to be and remain in an unsuitable condition, failed to soder [solder] the wiring therein, used stovepipes for plumbing, provided no vents to said plumbing, constructed a septic tank of no more than 300 gallons capacity, so constructed the concrete floor of said building as to cause the same to crack and be and remain in a rough and unsuitable condition, only provided for one toilet instead of two toilets and one bath, and in truth and in fact so constructed said building as said building now stands constructed, so wholly inadequately and unsuitably as to cause the same to be totally worthless and of no value.

### 4.

That the plaintiff herein by oral agreement entered into with the defendant, subsequent to the execution of plaintiff's Exhibit D, and by his acts and conduct undertook the responsibility of securing all materials for the construction of said building upon the credit of the defendant, and assumed the responsibility of gathering together said materials, locating the same and making the purchases for the defendant.

5.

That the plaintiff herein, with the designed purpose and intention of damaging this defendant placed said building as so constructed, partly upon other land owned by the plaintiff than land leased for that purpose to the defendant, and willfully and with the designed purpose of injuring this defendant, refused to timely, or expeditiously or at all continue the construction of said building, and in truth and in fact so delayed the construction of said building willfully, that the same was not completed on or about the 1st day of March, 1946, or at all, and willfully and maliciously forbade the defendant from continuing with the construction of said building and willfully and maliciously by threats to plaintiff or workmen and contractors of plaintiff prevented any further construction on the part of the defendant herein.

6.

That said written agreement, Exhibit A in plaintiff's complaint contained, provided and does provide for the construction of a building to be used for restaurant purposes and that the defendant herein so intended to use said building for restaurant purposes, and that but for the willful acts of this plaintiff, said building would have been constructed and completed on or about the 1st day of March, 1946, and but for the willful and malicious acts of the said plaintiff as herein alleged, the defendant would have opened a restaurant and conducted a restaurant business from and after the 1st day of March, 1946, during the life of said lease and that this defendant alleges that said business would have brought her returns in the amount of $4,000.00 per month, and that because of the willful acts of the plaintiff herein she has been prevented from continuing a restaurant business or from earning any money whatsoever, because of said business, and that the plaintiff willfully appropriated properties purchased to be used in said

building to his own use and benefit, and that defendant was thereby caused to expend vast sums of money in the construction of said building, to-wit: in the appropriate amount of $6,000.00, and that the acts of the plaintiff as herein alleged were and are the direct proximate cause of defendant's damages in the amount of $100,000.00.

### 7.

That the acts and conducts herein complained of on the part of the plaintiff were and are willful and malicious and that the plaintiff should be punished therefore in the further amount of $50,000.00.''

On motion of plaintiff the trial court struck all of paragraph seven of defendant's second amended counterclaim and the portion of the prayer, based thereupon, as sham, frivolous, irrelevant and redundant matter.

Plaintiff in his reply admits that by written and oral agreements, plaintiff and defendant entered into the further agreement and thereby in said written and oral agreements plaintiff undertook to construct the building in suit.

Except as in plaintiff's complaint or in his reply alleged, plaintiff in said reply denies each and every other allegation in defendant's further and separate answer and counterclaim and for a further and separate reply thereto alleges:

### "I

That all plumbing heretofore used in said building was by and with the consent and approval of defendant and by and with material furnished by her;

That a septic tank of 300 gallon capacity was that furnished by the defendant;

That one toilet in place of two and bath is as provided for between the parties hereto by supplemental oral agreement; that shower instead of tub as originally provided for was constructed in said building by the defendant herself.

## II

That the building in state of partial construction is partly upon land described in Exhibit A to plaintiff's complaint and partly upon other lands owned by the plaintiff; that the building was constructed in the place where the same actually stands by mutual consent of the parties hereto and by agreement of the plaintiff to provide additional lands over and above those described in Exhibit A to plaintiff's complaint; that plaintiff is ready and willing and has been at all times and has heretofore offered to correct the description contained in Exhibit A to include additional lands, being all the lands on which the building is constructed together with suitable lands surrounding the same.

## III

That plaintiff did not undertake to purchase additional materials upon the credit of defendant; that plaintiff could not have purchased additional materials upon the credit of the defendant for the reason that defendant had no credit whatsoever by reason of the fact that defendant had not then and to a very recent date had not paid bills for material theretofore ordered by her and used in the construction of said building, and as plaintiff is informed and believes and, therefore, alleges has not to date paid said material bills; that by reason of the facts aforesaid defendant was without credit."

On the 20th day of September, 1947, the trial court entered a decree dismissing defendant's counterclaim for damages and granting defendant a lien upon the premises in suit in the sum of Three Thousand Seven Hundred and Ninety-four and 58/100 ($3,794.58) Dol-

lars in which decree it is provided that, if said sum shall not be paid by the plaintiff, without interest, prior to six months from the date of said decree, execution may issue and said premises be sold in the manner provided by law for the sale of real property on execution, and the proceeds applied first to the payment of costs and expenses of said sale; secondly, in satisfaction of defendant's lien, and the balance, if any, to the clerk of the trial court for the use and benefit of plaintiff.

In said decree, it is further ordered and adjudged that in the event plaintiff shall pay to the clerk of the trial court for the use and benefit of defendant the sum of $3,794.58 within a period of six months from the date of said decree, that upon such payment, plaintiff shall be and is decreed to be the owner of the premises in suit free and clear of any right, title interest, lien, claim or demand of the defendant or any one claiming under, by or through her.

In said decree, it is further ordered and adjudged that plaintiff is entitled to the immediate possession of said premises; that defendant is permitted within a period of thirty days from the date of said decree to remove from said premises a trailer-house with leanto attachment, provided that in said renewal defendant shall leave upon said premises all windows therein; and that neither party recover costs or disbursements herein.

We find in defendant's brief, the following statement:

"The appellant was willing that the matter be tried in equity and has accepted the equitable relief granted, not to the respondent, but to her for the funds expended for the building."

This advises us that the defendant has accepted an

award to her of money by the trial court as a settlement and discharge of plaintiff's liability to her.

■ Because of such acceptance by defendant and because defendant has appealed only

"from that part of the decree made and entered in the above named Circuit Court of the State of Oregon for the County of Douglas on the 20th day of September, 1947 whereby the counterclaim of the defendant against the plaintiff for damages was dismissed," [Defendant's Notice of Appeal],

the only question before us is whether defendant was entitled to recover in whole or in part the damages alleged in her counterclaim exclusive of the sums of money therein alleged to have been expended by her in the construction of said building. In other words, the propriety or impropriety of the award by the trial court to defendant for money expended is not before us.

■ As stated, the trial court struck from the pleading defendant's allegation upon which her claim for punitive damages was based. A suit or action upon a contract ordinarily will not afford an opportunity for a recovery of punitive damages. 25 C. J. S., Damages, § 120, page 716, notes 84 and 85; 17 C. J., § 272, pages 976, 977, notes 34 and 35, and authorities there cited; *Peitzman v. City of Illmo,* C. C. A. (Mo.) 141 F. 2d 956, Cert. den. 65 Sup. Ct. 47, 323 U. S. 718, 89 L. Ed. 577, rehearing denied, 65 Sup. Ct. 112, 323 U. S. 813, 89 L. Ed. 647; *Haigler v. Donnelly,* 18 Cal. 2d 674, 117 P. 2d 331; *Sams v. Curfman,* 111 Col. 124; 137 P. 2d 1017; *Zweifel v. Lee-Sherman Realty Co.* (Mo. App.) 173 S. W. 2d 690; *Thomas v. Sterling Finance Co.* (Mo. App.) 180 S. W. 2d 788, 792; *Stewart v. Potter,* 44 N. M. 460, 104 P. 2d 737; *Avery v. Shields,* 50 N. Y. S. 2d 939; *Saberton v. Greenwald,* 146 Ohio St. 414, 66 N. E. 2d

224, 229, 165 A. L. R. 599; *Hankey v. Employer's Casualty Co.* (Tex. Civ. App.) 176 S. W. 2d 357.

■ Moreover, the only grounds that the records in this case seem to present upon which to base a claim that punitive damages should be imposed is that plaintiff instituted in the Justice Court for Deer Creek District a forcible entry and detainer case against defendant to regain possession of the premises in suit; and, defendant having at different times set two men to work upon the building in suit, plaintiff refused to permit them to engage in any such service and ordered them to leave the premises. We think that under the facts developed herein neither recourse to the legal remedy mentioned nor plaintiff's treatment of said workmen support the charge of malice or disregard of defendant's right to such a degree as to justify a recovery of punitive damages. Defendant had placed upon the premises in suit a trailer house and defendant's husband and defendant occupied the same.

In the forcible entry and detainer action, the defendant filed an answer included in which were five further and separate answers and counterclaims and a prayer for judgment for defendant in excess of the amount over which the justice court has jurisdiction, whereupon said action was transferred to the circuit court which, except that its transcript was introduced as an exhibit in the instant case, said forcible entry and detainer action has not been called to active service in juridical conflict.

■ The claim for damages, because of loss of prospective profits in the operation of the restaurant and tavern business, is speculative and incapable of exactitude. Moreover, we are unable to concur with defend-.

ant that plaintiff committed the first breach of the contract in suit.

■■ As we view the record, defendant expressly agreed to construct a building on said premises. It is true that she also agreed that plaintiff and his son should perform the actual physical labor required in its construction, but at the same time defendant agreed to purchase and place upon the premises the material required for said building. Aside from preparing the ground upon which a proposed building is to be erected, the first step to be taken is to place the necessary building material upon the ground. The performance of the work of constructing the building necessarily follows the placing of the material and rendering it available to the workmen. We think that the record discloses a breach of her agreement by defendant in that she failed to purchase and place upon the ground a sufficient amount of the required material; and we also think that necessarily that breach by defendant occurred before plaintiff and his son breached their agreement to construct the building according to the approved plans and specifications. The learned trial judge did not err in disallowing defendant's counterclaims for damages.

> * * * "The general rule is that in order to recover exemplary damages there must be actual damage shown, although the elements otherwise authorizing the assessment of exemplary damages may exist." *Martin v. Cambas,* 134 Or. 257, 261, 293 P. 601, and authorities there cited.

The decree of the circuit court is affirmed.