Argued April 24, affirmed in part; reversed in part May 31, 1973

HEINKEL, *Respondent-Cross-Appellant, v.* CITY
OF CORVALLIS (No. 25480), *Appellant.*

510 P2d 579

*Scott Fewel,* Corvallis, argued the cause for appellant. With him on the brief was James Eickelberg, Corvallis.

*Jack H. Cairns,* Portland, argued the cause and filed the briefs for respondent-cross-appellant.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

In December 1968, plaintiff-contractor entered into a contract with the city of Corvallis for the expansion of its Douglas Taylor Water Treatment Plant. The parties agreed that the work was to be completed by June 15, 1969, but the contract provided for extension of the completion date if the work was delayed by causes beyond the contractor's control. The contract also contained a liquidated damages provision

which provided that the contractor would be liable to the city for $300 per day for each day of non-completion (excluding Sundays and holidays).

On February 2, 1971, plaintiff filed a complaint against the city of Corvallis, alleging substantial completion of the contract on or before April 10, 1970, and demanding payment of the balance due under the contract. The complaint further alleged that the delays in completion were due to circumstances beyond plaintiff's control and therefore excused under the contract.

Defendant's answer and counterclaim contended that substantial performance did not occur until September 15, 1970, denied that plaintiff's delays in performance were excused under the contract, and demanded liquidated damages pursuant to the contract for the period from February 17, 1970, to September 15, 1970, a total of 178 days. The amount claimed by the city by way of liquidated damages exceeded the amount claimed by the contractor to be due under the contract.

The trial court found that the delays occurring through July 9, 1970, were excused pursuant to the terms of the contract, but that the delays in completion from that time forward were occasioned by acts or omissions of the plaintiff. The court further found that substantial performance did not occur until September 15, 1970, as alleged in the city's answer and counterclaim, and it therefore concluded that the city was entitled to liquidated damages for a period of 46 days between July 9 and September 15 as an offset to the amount due plaintiff under the contract. Both parties have appealed.

The city's principal assignment of error is that

the trial court erred in finding that the delays through July 9, 1970 were justified under the contract. Plaintiff's principal assignment on its cross-appeal is that there is no substantial evidence to support the award of liquidated damages from that date to September 15, 1970. With regard to both of these assignments, our inquiry is limited to whether there is any evidence to support the court's finding. If there is, the finding must be upheld. ORS 17.435.

■ As to the period up to July 9, 1970, the main impediments to expeditious completion of the project were (1) delays in the delivery of certain butterfly valves and (2) problems with the high service pump. The situation was complicated by the fact that the high service pump could not be tested until the butterfly valves were delivered and installed. There were also a number of minor impediments, including the failure of a supplier to deliver the filter medium for the treatment plant's filter beds and settling tube modules for the sedimentation basins. Finally, significant problems were caused by the fact that part of the plant had to be functioning throughout the construction period to fill the city's need for water; this meant that plaintiff could not always shift his activities readily from one aspect of the project to another.

The sequence of events was as follows: (1) The crucial butterfly valve was delivered on February 17, 1970, but it had an improper component which made it dysfunctional; (2) the proper component was received on March 25, 1970; (3) thereafter, the butterfly valve was installed, and the high service pump was tested on April 8, 1970, but the head pressure on the pump was found to be too high; (4) a relief valve to

reduce the pressure was ordered and subsequently installed on July 10, 1970; (5) the pump was retested on July 22, 1970, and was found to be performing acceptably.

The evidence presented at trial indicates that the plaintiff pursued the problem of the late butterfly valves in a resourceful fashion. However, he was hampered in his efforts by various occurrences, including a strike in the industry, a government requisition which took priority over his order, and miscarriage of mail due to unusual weather conditions. As to the problems with the high service pump, the evidence indicates that the engineers retained by the city were at least partly responsible for the delays, since they do not appear to have made their specifications completely clear to the pump manufacturer at the outset or during subsequent contacts. The evidence further indicates that plaintiff was not actively involved in discussions regarding the high service pump, but rather that that aspect of the project was handled between the pump manufacturer and the engineers retained by the city.

After reviewing the record, we are satisfied that there is evidence from which the court as the trier of fact could reasonably have found as it did that the delays up to July 9, 1970 were not the fault of plaintiff and were therefore excused under the contract.

■ We now turn our attention to the issue raised by plaintiff's cross-appeal, viz., whether there is evidence in the record to support the trial court's findings (a) that substantial performance did not occur until September 15, 1970, and (b) that the delay from July 9, 1970, to September 15, 1970, was plaintiff's fault, thereby entitling the city to liquidated damages.

Plaintiff alleged in his complaint and contends before this court that substantial performance occurred on or prior to April 10, 1970. He bases this contention on the fact that the city's engineers concluded that the project was 98.4 per cent complete at that time. This percentage was arrived at by computing the average extent of completion of all aspects of the project, many of which were 100 per cent completed. However, the mere statement of such a percentage figure does not answer the inquiry in this case, since the most essential component of the project, the high service pump, had not yet been tested or approved and was therefore listed at a figure of 90 per cent completion.

The standard for determining substantial performance was stated in *Mathis v. Thunderbird Village, Inc.*, 236 Or 425, 438-39, 389 P2d 343 (1964), as follows:

"* * * Substantial performance is accomplished although the contract is not completely performed if the omissions and deviations from the performance required by the contract are inadvertent and unintentional, do not impair the structure as a whole, can be easily remedied, and may be paid for by deductions from the contract price. *Pippy v. Winslow*, 62 Or 219, 222-223, 125 P 298 (1912)."

*See also* 13 Am Jur 2d 46-47, Building and Construction Contracts § 43, where it is stated:

"* * * [I]t may be stated generally that there is substantial performance of such a contract where all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed are performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract. Imperfections in the matters of detail which do not constitute a deviation from the general plan contemplated for the work, do not enter into

the substance of the contract, and may be compensated in damages, do not prevent the performance from being regarded as substantial performance." (Footnotes omitted.)

Under these standards, substantial performance cannot be held to have occurred on or about April 10 since an integral part of the project was incapable of functioning.

The city contends, and the trial court found, that substantial performance did not occur until September 15, 1970, but the record does not support that finding. We have been referred to nothing in the record which would attach any particular significance to that date, nor has our own review of the record disclosed any such significance. Even the city's director of public works admitted that he did not know when the project was completed. He was unable to attach any significance to the date of September 15, 1970. At oral argument it was stated that September 15, 1970, was the date on which the project was formally approved by the city of Corvallis. But even if that is the case, such a formal action is not an indication of when substantial performance in fact occurred. Therefore, there is no evidence to support the trial court's finding that substantial performance occurred on September 15, 1970.

Our review of the record convinces us that substantial performance actually occurred on or about July 22, 1970. It was on that date that the high service pump was tested as modified by the pressure relief device and found to be adequate. A memorandum dated July 28, 1970, indicates that the project was functioning properly as of that date. A "punch list" dated July 29, 1970, listed a number of minor items remaining to be done, but the expense involved in these final

items was only about $1,000 as compared to a total contract price of over $400,000, and the undisputed testimony of the plaintiff was that none of these items would substantially interfere with the operation of the water treatment plant.

■ The only time period which remains to be considered is that between July 9, 1970 (the date up to which the trial court found the delays justified) and July 22, 1970 (the date of substantial performance). The record is clear that the delay during that period of time was due to the inability of the engineers retained by the city to arrange for a test of the modified pump. Therefore, we conclude that that period of delay was also excused under the contract since it was due to causes beyond the control of plaintiff.

■ The city also assigns as error the trial court's denial of its motion to amend its answer and counterclaim so as to allege actual damages as an alternative count to the allegations claiming liquidated damages.

After all evidence was in, the city moved to amend its answer and counterclaim to conform to the proof. Since some evidence of actual damages was in the record, the city sought to allege its actual damages as an alternative to liquidated damages. The trial court denied the motion, stating that it had allowed the city to put in evidence of actual damages only to allow the court to better determine whether the liquidated damages provision bore any reasonable relationship to actual foreseeable damages and was therefore valid, or whether the provision was invalid as a penalty. Since the trial court held the liquidated damages provision to be valid, it ruled that the city was precluded from recovering actual damages. This was correct. *Learned v. Holbrook,* 87 Or 576, 589, 170 P

530, 171 P 222 (1918) ; 22 Am Jur 2d 321, Damages § 235. There is no merit to this assignment of error.

The other assignments of error presented on this appeal are disposed of in the preceding discussion.

The judgment of the circuit court is reversed insofar as it allowed the defendant-city liquidated damages as an offset to the amount due plaintiff.

Affirmed in part; reversed and remanded in part.