# LAYTON MANUFACTURING CO., *Appellant,*
## *v.*
# DULIEN STEEL, INC., *Respondent.*

### (No. 84817, SC 24475)

560 P2d 1058

Thomas B. Brand, Salem, argued the cause for appellant. With him on the briefs was Brand, Lee, Ferris & Embick, Salem.

Walter H. Grebe, Portland, argued the cause for respondent. With him on the brief was Anderson, Hall, Lowthian, Gross & Grebe, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Lent, and Bohannon, Justices.

PER CURIAM.

## PER CURIAM.

This is an action brought to recover damages for breach of a lease agreement. Plaintiff appeals from an order dismissing its complaint and awarding judgment in favor of defendant for costs and attorney fees.

After a train derailment had spewed wrecked railroad cars into a drainage ditch near plaintiff's manufacturing plant, plaintiff leased a portion of its property to defendant for two months in order to allow defendant to remove the wreckage. By the terms of the lease, defendant agreed to pay $100 for the leasehold and promised to remove the cars and leave the property in a "neat, clean, orderly and presentable condition" by September 25, 1973. Defendant had previously contracted with the Southern Pacific Transportation Company for the purchase of the cars. The lease agreement contained a provision which obligated defendant to "pay the additional sum of $30 per day for each day [after September 25, 1973] until the work is completed . . . as reasonable rental therefor."

All of the wreckage, however, was not removed by the time the lease terminated. The continued blockage of the ditch later caused flooding of plaintiff's manufacturing plant.

On May 10, 1974, plaintiff filed an action for breach of the lease, alleging that the property was not left in "a neat, clean, orderly, and presentable condition" as agreed until April 1, 1974. The total sum prayed for was $5,610 under the $30-per-day holdover provision. Plaintiff alleged no additional ground for recovery. Defendant filed an answer and as a first affirmative defense alleged that the $30-per-day clause was unenforceable as a penalty provision. Plaintiff, on the other hand, contended that the provision was one for liquidated damages.

Pursuant to stipulation by the parties, the affirmative defense was segregated for trial without a jury and separately tried on December 11, 1974. After a

hearing, Judge Schlegel held that the clause was a penalty provision. Plaintiff then moved for an order allowing it to file an amended complaint. This motion was granted over defendant's objection. Defendant's motion for reconsideration of that ruling was denied. Defendant then petitioned this court for an Alternative Writ of Mandamus to compel the circuit court to disallow the amendment. By way of letter order, we denied that petition. *State ex rel Dulien Steel, Inc. v. Honorable Jena Schlegel,* 24052, (June 24, 1975).

Plaintiff's amended complaint, based on breach of contract and trespass, alleged $15,000 consequential damages as a result of the flooding. When this cause came for trial before Judge Ertsgaard on December 15, 1975, defendant orally moved for a reconsideration of the earlier order allowing amendment and moved to strike plaintiff's amended complaint. The court granted defendant's motions and entered judgment against the plaintiff. Plaintiff appeals from this dismissal and from the earlier ruling on the agreed damages clause.

We first review the determination that the $30-per-day holdover clause is unenforceable as a penalty provision.

As a general rule, an agreed damages clause is unenforceable where the provision is designed only to secure performance of a contract, rather than pre-estimate the anticipated damages. *See Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965); *Secord v. Portland Shopping News,* 126 Or 218, 269 P 228 (1928); *Yuen Suey v. Fleshman,* 65 Or 606, 133 P 803 (1913); *see also Babler Bros., Inc. v. Hebener,* 267 Or 414, 517 P2d 653 (1973); *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975); *Chaffin v. Ramsey,* 276 Or 429, 555 P2d 459 (1976). Whether a contract provision is essentially designed to operate as a penalty is a question of law to be decided by the court. *Medak v. Hekimian, supra.*

A contract provision which presets the amount to be

paid to a damaged party will not be construed as an enforceable provision for liquidated damages unless (1) the actual damages resulting from a breach are difficult or impossible to ascertain, and (2) the damages agreed upon had a reasonable relationship to probable losses. *Medak v. Hekimian, supra; Secord v. Portland Shopping News, supra;* Restatement of Contracts, § 339.

At the time the parties signed the contract, two types of damage from failing to remove the railroad cars could have been contemplated: (a) loss of the use of the land, and (b) flooding due to blockage of the drainage ditch. The extent of either of these losses would be difficult to prove. It would not be unreasonable to attempt to preestimate the damages by stipulation in the contract. The inquiry, then, is solely whether the holdover clause is a reasonable forecast of anticipated loss.

A provision which assesses $30 per day as damages until the debris is removed is not a reasonable forecast of flooding damages which may have been suffered in the interim. If plaintiff's plant had been inundated two days after the expiration of the lease and if defendant removed all of the offending materials by September 30, 1973, the damages under the contract would be $150. Under the same facts, if the property were not put in presentable condition until several years later, the agreed damages would most likely be grossly disproportionate to the actual harm brought about by the flood. The damages which can be recovered under the contract depend entirely upon the time of performance by defendant of its contractual obligations. This fortuity bears no relationship to any anticipated flooding damages.

The evidence at the hearing was inconclusive on the issue of whether $30 per day was a reasonable forecast for loss of the use of the land. Evidence of the amount of land covered by the debris was conflicting. Defendant's witness opined that 1½ acres were covered.

Plaintiff's witness testified that the wreckage was strewn on five or six acres. According to plaintiff, the land was normally used for testing machinery. The evidence showed that the parties did not discuss the potential harm caused by a breach in the negotiation of the lease. Plaintiff, however, termed the damages clause as a "penalty" in a letter sending the lease to defendant.

Defendant argues that $30 per day was an unreasonable rental value when compared to the stipulated rent for the main period of the lease ($100 for two months). The rental rate for the lease period was for land rendered useless by large amounts of debris. This is not evidence of the rental value of the same land in an uncluttered condition. Defendant, moreover, was obligated to do more than pay $100 for the use of the land. It agreed to remove the materials and leave the property in a presentable condition. Thus, consideration beyond the payment of money was given in exchange for the two-month occupancy.

■ Defendant further contends that because plaintiff termed the provision as a "penalty," it is precluded from now asserting that the clause was a forecast of anticipated harm. The general rule is that the denomination given by the parties to an agreed damages clause is not conclusive. *Elec. Prod. Corp. v. Ziegler Stores,* 141 Or 117, 125, 10 P2d 910, 15 P2d 1078 (1932); *Manley Auto Co. v. Jackson,* 115 Or 396, 401, 237 P 982 (1925).

There was no evidence of the intensity and economic value of plaintiff's normal use of the property. We do not know whether the entire area was incapacitated by the wreckage. Because it would be speculation to decide the reasonableness of the damage estimate, the party bearing the burden of proof on this question must suffer the risk of nonpersuasion; and that party here is the defendant.

We recently recognized in *Chaffin v. Ramsey, supra,* that the better rule may be to assign the burden

of proof to the defendant in cases where defendant resists the enforcement of an agreed damages provision. In *Chaffin* it was unnecessary to adopt such a rule due to the evidentiary posture of that case.

██ Aside from *Chaffin,* however, in this case defendant chose to plead, as an affirmative defense, that the damages clause was a penalty provision. Defendant requested a special hearing on this question in advance of trial. In that hearing, defendant presented evidence first and was first in giving closing arguments. As a practical matter, then, defendant assumed the burden of proof on this issue, and this assumption will not be disturbed on appeal. As the court noted in *Raiche v. Standard Oil Co.,* 137 F2d 446 (8th Cir. 1943), "Having elected to try her case in the trial court on the theory that the burden of proof was upon her, she can not on appeal seek reversal on a different or inconsistent theory." *See also Jensvold v. Chicago, Great Western R. Co.,* 236 Iowa 708, 18 NW2d 616, 619 (1945). Similarly, in *Copper State Mining Co. v. Kidder,* 20 Ariz 224, 179 P 641, 643 (1919), the court adopted "the usual rule . . . that the burden of proof is upon him who assumes it by opening and closing the evidence and argument upon the issues involved."[1]

█ The trial judge in this case apparently placed the burden of proof on the plaintiff in ruling that the provision "has not been established as a reasonable

---

[1] Ordinarily the defendant has the burden of proof as to affirmative defenses. ORS 41.210. The general rule is that "The burden is on the defendant to prove matter in avoidance, special, or affirmative defenses, and other new matter urged by him as ground for denying plaintiff relief. However, defendant, by specially pleading matter which he could prove under a denial of the plaintiff's allegations, does not assume the burden of proof as to such matters." 31A CJS, Evidence 178-80 § 104 (1964). It may be that a denial of plaintiff's allegations by defendant would be sufficient to raise the reasonableness of the agreed damages clause and that the affirmative defense, here, was surplusage. Were we to assume that plaintiff initially had the burden of proof (contrary to the dictum in *Chaffin*), then, it would not shift because of the affirmative defense. *See Haynes v. Dairyland Mutual Ins. Co.,* 199 NW2d 83, 86 (Iowa 1972). Because of the assumption of the burden of proof in this case by the defendant, it cannot take advantage of such a rule.

liquidated damages clause." In view of the assumption of this burden by the defendant, as well as the views we took in *Chaffin,* defendant in the instant case had the risk of nonpersuasion.

Because this onus fell on the defendant and in view of the evidentiary omissions discussed above, the ruling of the trial court must be reversed.

Prior to the hearing on the agreed damages provision, the parties stipulated that the cause of action would proceed to trial in the event the affirmative defense of penalty was not established. We remand for a trial on plaintiff's original complaint. Defendant is precluded by its failure of proof in the preliminary hearing from litigating again the reasonableness of the damages clause. In light of this, it is unnecessary to consider the issue of whether amendment of the complaint by plaintiff was proper.

Reversed and remanded for further proceedings consistent with this opinion.

**LENT, J.,** concurring.

I agree with the reasoning of the majority opinion but wish to separately state my views on refining the law on agreed damages clauses. Because of clashing precedent, it has become difficult to predict the result in any close case on the validity of a stipulated damages provision. The outcome often depends upon which set of conflicting rules the court chooses to follow; and in many cases the reasons for that choice have remained unarticulated. Because such discretion is unchecked by consistent standards, I believe that it is time to reformulate simpler guidelines in this area which are consistent with our expressed policies in past decisions.

One key area of ambiguity is in the effect given to the "intent" of the parties in determining the reasonableness of a damages provision. Although it is often expressed that the actual intent of the parties is

immaterial in determining objective reasonableness,[1] speculation upon the presumed "intent" of the parties has crept into our decisions under the guise of requiring a "genuine pre-estimate" of anticipated damages.[2] As is pointed out in 5 Williston on Contracts 693, § 778 (Jaeger ed. 1961):

> "The only sense in which the intention of the parties can have any meaning in this connection, and this seems to be the meaning generally given to the phrase by the courts when the matter is analyzed by them, is an intention to name a sum that is fixed in good faith as the equivalent of the injury, which will probably be caused by breach of the contract, rather than an attempt to secure performance by a provision for an excessive payment.
>
> " 'Intention of the parties' is, however, a misleading and undesirable designation for this requirement, and the first step toward clearing the confusion of the law on the subject is to drop the use of the phrase from the discussion. Even the suggested substitute of an inquiry whether the parties in good faith attempted to estimate the real injury is a somewhat artificial cloak for the true principle."[3]

---

[1] The Restatement of Contracts, § 339 (1932), comment b provides: "In this matter neither the intention of the parties nor their expression of intention is the governing consideration. The payment promised may be a penalty, though described expressly as liquidated damages, and vice versa."

[2] *See, e.g., Wright v. Schutt Construction,* 262 Or 619, 624, 500 P2d 1045 (1972). *Compare Chaffin v. Ramsey,* 276 Or 429, 555 P2d 459 (1976).

[3] Similarly, McCormick notes that, "Formerly the validity of agreements was said to depend on whether the intention of the parties was to agree on liquidated damages or to fix a penalty. This gave too great decisiveness to the descriptive items used in the contract, and today the courts will consider the language only as evidence upon the question, Was the sum intended as a pre-estimate of the actual loss? But the decisive question in determining the issue is this, Was the amount named reasonably proportioned to the probable loss? The courts are tending to adopt this last as the sole test." McCormick, Damages 606, §149 (1935). Likewise, Corbin writes, "Seldom, if ever, however, do [the parties] stop to weigh their own purposes or draw fine distinctions as to their exact intention. They know that a breach will cause injury and disappointment, and they try to guard against its occurrence. It seems improbable that they often make a substantial effort to measure in money the extent of the possible future injury; and the greater the uncertainty and difficulty in

There is a conflict of views in our decisions as to whether the reasonableness of an agreed damages clause is determined in an objective manner (i.e., tested at the time of contract, was the stipulated sum a reasonable forecast of anticipated harm) or in a subjective manner (i.e., does the damages provision show a good-faith attempt to pre-estimate the actual loss). Nowhere is this split more apparent than when we are asked to determine the validity of a single stipulated sum for varying contractual breaches of degree or kind.

In general, three views have been expressed in this area.[4] Some courts, following the intent theory, have found that where an agreed damages clause provides the same amount of damages for breaches of varying importance it is unenforceable irrespective of whether the actual breach was of major or minor consequence. Presumably, these courts reason that if the parties genuinely intended to estimate the actual loss, they would have specified different sums for differing breaches. Some courts find the provision unenforceable if it would have been unenforceable as to any of the breaches to which it applies. Other courts enforce the damages clause if it is otherwise enforceable as to the breach which actually occurred.

The present case offers a good illustration. The parties contracted that, after the expiration of the lease, $30 per day would be owed until the property was left in a presentable condition. Were one to rely heavily on the intent theory, it would be possible to conclude that the parties could not have intended $30 per day to be a reasonable estimate of damages if all

measuring it, the more likely this is to be true . . . . [I]n general the only proof that [the parties made an advance valuation] is to be found in the sum specified and its relation to the performance promised and to the injury caused by non-performance. It is by considering this relation that the court must determine intention; it is the relation and not the intention that is the operative fact." 5 Corbin on Contracts 339-40, §1058 (1964).

[4]Macneil, "Power of Contract and Agreed Remedies," 47 Cornell L.Q. 495, 509 (1962).

but a few scraps of metal were removed (a minor breach). Therefore, it could be argued that the clause is inoperative as the parties actually "intended" a penalty clause. Under this analysis, the clause would be inoperative even if $30 per day was a reasonable forecast of the damages which were actually incurred. Carried to an extreme, then, the intent theory can be used to strike down most agreed damages provisions by postulating lesser breaches for which the stipulation would be plainly unreasonable.[5] Stipulated damages provisions have been voided in past Oregon decisions under this logic.[6]

Even if an objective theory is followed, problems persist. Suppose that at the time of making the contract the sum provided bears a reasonable relationship to anticipated loss and the actual damages are difficult to ascertain. In such a situation the agreed valuation will normally be considered as liquidated damages.[7] Yet our cases disclose that even if these conditions are met, if there are no actual damages or if the stipulated sum is grossly disproportionate to the actual damages, the clause will not be enforced.[8] As

---

[5] *See* Macneil, *id* at 510; McCormick, *supra,* at 611. Corbin also suggests that if the sum is a reasonable forecast of the actual loss, it should be enforced even if unreasonable as to other breaches which might have happened. 5 Corbin on Contracts 383-84, § 1066 (1964).

[6] *Dairy Coop. Ass'n v. Brandes Cry.,* 147 Or 488, 500-01, 30 P2d 338 (1934); *Elec. Prod. Corp. v. Ziegler Stores.* 141 Or 117, 125, 10 P2d 910, 15 P2d 1078 (1932); *Alvord v. Banfield,* 85 Or 49, 59, 166 P 549 (1917). *Contra, Strode v. Smith,* 66 Or 163, 179-80, 131 P 1032 (1913). *Compare* the majority and dissenting opinions in *Chaffin v. Ramsey,* 276 Or 429, 436, 555 P2d 459 (1976).

[7] Restatement of Contracts § 339 (1932). This test was adopted in Oregon in *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965) and applied subsequently in *Weber v. Anspach,* 256 Or 479, 473 P2d 1011 (1970); *Harty v. Bye,* 258 Or 398, 483 P2d 458 (1971); *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972); *Babler Bros., Inc. v. Hebener,* 267 Or 414, 517 P2d 653 (1973); *Schlecht v. Bliss,* 271 Or 304, 532 P2d 1 (1975); *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975); and *Chaffin v. Ramsey,* 276 Or 429, 555 P2d 459 (1976).

[8] *Wright v. Schutt Construction,* 262 Or 619, 625, 500 P2d 1045 (1972); *Harty v. Bye,* 258 Or 398, 407-08, 483 P2d 458 (1971). *See also Learned v. Holbrook,* 87 Or 576, 170 P 530, 171 P 222 (1918); *Strode v. Smith,* 66 Or 163, 131 P 1032 (1913); and *Hull v. Angus,* 60 Or 95, 118 P 284 (1911).

was recognized in *Wright v. Schutt Construction,* 262 Or 619, 624, 500 P2d 1045 (1972), this approach is not universally followed:

> "The authorities also are not in complete accord on the question of the effect of evidence that despite such a good-faith 'pre-estimate' or 'forecast' of such damages, the parties were mistaken in that no actual damages resulted from the breach, or the amount of the actual damages was much less than the amount of the liquidated damages."

Because there is usually little negotiation as to damages clauses or evidence of the intent of the parties at the time of the contract, we have become increasingly dependent upon the amount of the actual damages as evidence of the reasonableness of the stipulated sum. As noted in 5 Corbin on Contracts 362-64, § 1063 (1964):

> "The probable injury that the parties had reason to foresee is a fact that largely determines the question whether they made a genuine pre-estimate of that injury; but the justice and equity of enforcement depend also upon the amount of injury that has actually occurred. It is to be observed that hindsight is frequently better than foresight, and that, in passing judgment upon the honesty and genuineness of the pre-estimate made by the parties, the court cannot help but be influenced by its knowledge of subsequent events."

In our past decisions we have considered the relation of actual damages to the forecast of those losses in determining the reasonableness of the agreed damages provision. *Babler Bros., Inc. v. Hebener,* 267 Or 414, 420, 517 P2d 653 (1973); *Wright v. Schutt Construction, supra. See also, Heinkel v. City of Corvallis,* 13 Or App 375, 382, 510 P2d 579 (1973). Moreover, this "hindsight" approach is allowed under Uniform Commercial Code § 2-718(1). Codified in this State as ORS 72.7180(1), the section provides that:

> "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated *or actual harm* caused by the breach, the difficulties of proof of loss, and

the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." (emphasis supplied.)

Aside from speculation as to what the parties could have intended, the amount of actual damages becomes the key evidentiary factor as a practical matter where the reasonableness of an agreed damages clause is contested. The requirement that damages be difficult to ascertain is usually easily met. As Professor Macneil observes, uncertainty of damages can mean: (1) difficulty of producing proof of damages after breach has occurred; (2) difficulty of discerning what damages were caused by the breach; (3) difficulty of determining what damages were contemplated when the contract was made; (4) absence of a measure of damages for a certain breach; and (5) difficulty of forecasting, when the contract is made, all possible damages by any of the possible breaches.[9] In most contracts (except for simple transactions such as a loan of money or a sale of a commodity with a certain market value) one of these difficulties will be present.[10] McCormick writes,

"A survey of the rules by which unliquidated damages are measured will disclose how few and limited are the cases where, as a practical matter, it is possible to foretell with any exactness the precise amount or within a narrow range the approximate amount of damages to which the injured party will be entitled in the event of breach.

"* * * * *

"* * * Consequently where the court in a given case declines to enforce the provision as a penalty, and bases the result upon the fact that the actual damages were readily susceptible of estimation, it will usually be found that the amount agreed to be paid was grossly disproportionate to the actual loss, and it is believed that this is the real and only justification for refusing sanction to the agreement."[11]

---

[9] Macneil, *supra,* n. 4 at 502.

[10] *But see Babler Bros., Inc. v. Hebener,* 267 Or 414, 420, 517 P2d 653 (1973).

[11] McCormick, *supra,* n. 3, 604, 605 § 148.

As discussed previously, our past decisions are inconsistent in adhering to either a subjective or objective approach to the validity of agreed damages clauses. It is noted in 5 Corbin on Contracts 336, § 1057 (1964):

"When a court decides in favor of enforcement, it may bolster up its decision by strong general statements as to giving effect to the intention of the parties and as to freedom of contract. In refusing enforcement, it may speak broadly about the injustice of penalties and the inequity of awarding more than compensation measured by harm suffered."[12]

It has become difficult to predict with any sureness whether an agreed damages provision will be upheld by the courts. In the area of contractual relations and commercial law, such predictibility is desirable. In light of the present evidentiary role of actual damages and the recent suggestion by this court that defendant should bear the burden of proof on the reasonableness of these provisions,[13] a more simple rule can be formulated as follows:

"A liquidated damages clause should be treated as prima facie evidence of damages for breach. When a breach is shown, a presumption should arise in favor of the plaintiff that the amount computed under the liquidated damages clause is the proper recovery. The defendant would then have the opportunity to rebut this presumption by proving that the actual loss was less. In an action for breach of contract, where breach has been shown, but where determining the dimensions of damage is very difficult, plaintiff will be relieved of the burden of proving damages and awarded the liquidated amount. Yet the overcompensation that results when liquidated damages are shown to exceed actual loss is prevented."[14]

---

[12] As the court noted in *Evans v. Moseley,* 84 Kan 322, 114 P 374, 375 (1911): "There is no branch of the law on which a unanimity of decision is more difficult to find, or on which more illogical and inconsistent holdings may be found."

[13] *Chaffin v. Ramsey,* 276 Or 429, 434-36, 555 P2d 459 (1976).

[14] Comment, "Liquidated Damages as Prima Facie Evidence," 51 Ind L J 189, 197-98 (1975). Such a rule would only apply in non-adhesion settings. In situations where oppressive bargaining is present, liquidation clauses should bear the more intense traditional scrutiny.

This approach is desirable for many reasons. First, it resolves present ambiguities in the case law and makes easy a prediction of the enforceability of damages provisions. Second, it gives presumptive force to the agreement of the parties. This is in accordance with the policy enunciated in *Chaffin v. Ramsey,* 276 Or 429, 432, 555 P2d 459 (1976), that:

> "It can be argued that any agreement made between two parties should be given the effect intended by them unless the type of agreement entered into is in its nature likely to be oppressive and unfair because the promisor is not in a position to freely bargain with the promisee."

This solution would allow the parties to provide a remedy when proof of actual loss is impossible.

Third, the proposal would implement the policy of compensation which underlies judicial sanctions for breach of contract. As Mr. Justice Holmes once observed,

> "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it, —and nothing else."[15]

We would thereby disallow overcompensation to a party injured by the breach where actual damages are capable of fixation.

Finally, adoption of this approach would make the

---

[15] Holmes, "The Path of the Law," 10 Harv L Rev 457, 462 (1897). For a fuller exposition of the compensatory theory of contract damages, see: Comment, "Liquidated Damages as Prima Facie Evidence," *supra* n. 14; Birmingham, "Breach of Contract, Damages Measures, and Economic Efficiency," 24 Rutgers L Rev 273 (1970). We have previously recognized that breach of contract carries no moral stigma by disallowing punitive damages for such a breach. *See, Weaver v. Austin,* 184 Or 586, 200 P2d 593 (1948). It must be, then, a compensatory theory which is the underpinning of the allowance of remedies for breach of contract. Such a theory is consistent with judicial abhorrence of "penalty" provisions. As has been noted, "It has been said that penalties are opposed because the law opposes harsh bargains but since the law often accepts harsh bargains in other situations that explanation is not entirely satisfactory. Possibly the opposition to penalty clauses stems from a belief that one should be free to breach his contract upon payment of the actual damages that the breach causes, or even upon the belief that such breaches should be encouraged as a method of maximizing economic resources." Dobbs, *Remedies* 821, § 12.5 (1973).

judicial review of the issue of the validity of a stipulated damages provision a question of fact as opposed to the present treatment as a question of law. By this change, conservation of judicial appellate resources would be maximized. Such a view, moreover, would not significantly change the factual inquiry at the trial level, inasmuch as evidence of the actual damages presently plays a key role.

For these reasons, I would urge the adoption of this as a rule in the future by this court and by parties who litigate the reasonableness of liquidated damages clauses. Because the instant case was not heard by the full court, it would be inappropriate to use these facts as a vehicle for change without the participation of all of the members of this body.